**WAY et al. v. SIDDALL et al.** (No. 11834.)

Court of Civil Appeals of Texas. Fort Worth.
June 25, 1927.

Rehearing Denied Oct. 8, 1927.

1. Sales ⚫︎⟶176(6)—Payment of installments
on unsatisfactory refrigeration machine held
not to estop buyer from canceling sale, where
seller promised adjustment.

Payment of several monthly installments on
note given in payment of an unsatisfactory re-
frigeration machine *held* not to estop buyer from
claiming right of rescission and cancellation of
sale contract, where seller had promised to ad-
just machine so that it would work, but had
failed to do so.

2. Sales ⚫︎⟶176(1)—Letter stating refrigera-
tion machine was satisfactory, written im-
mediately after installment, held not to estop
buyer from canceling sale because of defects.

In action for cancellation and rescission of
sale of refrigeration machine, letter of accept-
ance, written before buyer had opportunity to
learn whether desired refrigeration could be ac-
complished, and stating that machine was doing
satisfactory work, *held* not to estop buyer from
claiming right of cancellation.

3. Sales ⚫︎⟶130(2)—In action to cancel sale,
allegations that plaintiff was unfamiliar with
refrigeration machine and relied on defendant
held sufficient allegations of inducement.

In action to cancel sale of refrigeration ma-
chine, allegations that plaintiff was not familiar
with refrigeration machines, and relied on rec-
ommendations, statements, guaranties, and war-
ranties of seller, and that machine installed was
continuously out of repair, and plaintiff had ob-
tained no service whatever from it, *held* to suf-
ficiently allege that plaintiff was induced to enter
contract relying on seller's representations, and
that such representations were false and made
to induce him to enter into the contract.

4. Sales ⚫︎⟶130(2)—In suit to cancel sale of
refrigeration machine, allegations that ma-
chine was worthless and plaintiff "now ten-
ders machine back" held sufficient tender.

In suit to obtain cancellation and rescission
of sale of refrigeration machine, allegations in
plaintiff's petition that the machine was useless
and had no market value, and that plaintiff "now
tenders machine back," *held* sufficient offer to
restore "status quo ante or to do equity as re-
quired by law."

5. Sales ⚫︎⟶52(7)—Evidence held to support
judgment canceling contract for purchase of
refrigeration machine, because machine was
not as represented.

In action to cancel contract for purchase of
refrigeration machine to operate with certain
type of soda fountain, because machine was not
as represented, evidence *held* to support judg-
ment for plaintiff.

6. Sales ⚫︎⟶130(4)—Plaintiff, securing cancel-
lation of sale contract, held entitled to recover
for amount necessary to pay bona fide hold-
ers of plaintiff's notes.

Plaintiff, securing cancellation of contract
for the sale of refrigeration machine, *held* en-
titled to recover for amount necessary to pay
plaintiff's notes given in payment of machine,
which were in hands of bona fide holders.

Appeal from District Court, Cooke County;
W. S. Moore, Judge.

Suit by Dan Siddall against K. W. Way
and others, a partnership doing business un-
der the name of the Way Engineering Com-
pany and the Southwest Purchase Corpora-
tion. Judgment for plaintiff as against the
Way Engineering Company. Judgment for
defendant Southwest Purchase Corporation.
Defendant Way Engineering Company and
others appeal. Reformed, and, as reformed,
affirmed.

W. O. Davis, of Gainesville, and Wm. E.
Hawkins, of Breckenridge, for appellants.

Adams & Jones, of Gainesville, for appel-
lees.

BUCK, J. Dan Siddall, a resident of Cooke
county, filed suit in the district court against
K. W., L. C., and W. J. Way, a partnership
doing business under the trade-name of Way
Engineering Company, all of whom were al-
leged to reside in Bexar county, but, at the
time of the transaction out of which the suit
grew, did business in Dallas county, and the
Southwest Purchase Corporation, a private
corporation having its place of business in
Dallas county. For cause of action, plaintiff
alleged that he entered into a written con-
tract with the Way Engineering Company
(hereinafter styled defendant) whereby the
defendant contracted and agreed to sell, de-
liver, and install for plaintiff in his drug
store at Gainesville, Tex., Cooke county, one
certain Lipman automatic refrigeration ma-
chine; that said refrigeration machine was
to be attached to a four-packer soda fountain
with equipment for mechanical refrigeration;
that by the terms of said written contract
the said defendant company, as the sellers
thereof, guaranteed and warranted the said
machine installed under said contract to have
refrigerating capacity equivalent to the melt-
ing of 500 pounds of ice each 24 hours, and
that it would produce in a test run, when said
machine was placed in operation, and would
continue to produce, a temperature not high-
er than 5 degrees Fahrenheit, and to re-
frigerate four packers or containers of ice
cream; that the consideration for said ma-
chine, paid and to be paid by the plaintiff,
was the sum of $650, $162.50 being paid by
the plaintiff at the time of installation, on or
about May 24, 1924, and the execution of a
promissory note in the sum of $487.50, pay-
able in 12 monthly installments of $40.62 each.

Plaintiff alleged that at the time of the exe-
cution of said written contract he was not
familiar with refrigerating machines, espe-
cially the Lipman machine, nor did he know
how such machine should be installed, nor

when they were properly installed, nor when the machinery thereof was properly insulated, and he acted upon and was controlled by the statements, recommendations, guaranties, and warranties of the defendant company with reference to said machine and with reference to its installation and operation; that by virtue of said contract the defendant Way Engineering Company furnished the installation of said machine in plaintiff's store on or about May 25, 1924, the agents, servants, and employees of said company representing to plaintiff that said machine had been properly installed and properly insulated, and was ready for perfect operation, and, relying upon said statements and representations, plaintiff accepted said machine, although the said agents and servants of said company well knew that said machine was not in perfect condition, and would not refrigerate four packers, as called for in said contract, and well knew that said machine would not have a refrigerating capacity equivalent to the melting of 500 pounds of ice each 24 hours, and well knew that said machine would not run and produce a temperature not higher than 5 degrees Fahrenheit each 24 hours; that said company, its agents, servants, and employees falsely and fraudulently made such statements to plaintiff in his store in the city of Gainesville, for the purpose of deceiving plaintiff, and knew that said machine would not do the things claimed by them and which it was guaranteed and warranted to do by said written contract; that said machine had been out of repair continuously from the time of its installation; and that the greatest amount of refrigeration plaintiff has ever obtained from the use of said machine was just enough to refrigerate and keep two packers, and that at no time has said machine furnished sufficient refrigeration to refrigerate four containers; that plaintiff, immediately upon learning of the failure of the machine to do the work it had been guaranteed to perform, notified defendant of the defects and requested defendants to properly install the same, or repair the same, or in some way to adjust the machine, so that it might furnish the refrigeration provided for in the terms of said contract, but that said defendants failed and refused to do this.

Plaintiff further alleged that there was still due and unpaid $162.54, or the amount of four · installments; that he had been compelled to expend the sum of $166.88 in his efforts to make the machine work, and that such expenses were reasonable and proper charges for the service rendered; that he had been forced to quit using the machine for some six months prior to the suit. He alleged that the machine was of no value to him, nor was there any market value for it, and he tendered the machine to defendants and asked for a rescission of the contract, and cancellation of the unpaid notes, and recovery of the total consideration, including the $166.88, expenses incurred.

Plaintiff further alleged that the Southwest Purchase Corporation, hereinafter called Southwest, claimed to now own said written contract and installment notes attached thereto, and that said corporation claimed that it was entitled to recover of plaintiff the said contract and notes; but plaintiff alleged that said notes and contract was one and the same instrument, and was not negotiable. Plaintiff further alleged that said Southwest Corporation purchased said notes with notice of the provision in said contract with reference to the guaranty and warranties. Plaintiff further pleaded that, if said contract of sale of the notes from the Way Engineering Company to the Southwest should be held valid, and that the Southwest was entitled to recover the balance due on the contract and notes, then that the plaintiff recover of the Way Engineering Company the total sum of said balance, together with all other payments made prior thereto.

Plaintiff further alleged that, at the time he made the contract of purchase for said machine from defendants, he was at the time negotiating with the American Soda Fountain Company for one of their soda fountains to be used in connection with the refrigerating machine which he at the time contracted for with defendants; that the representative of said soda fountain company and the defendants were all present at the time of the negotiations, and that the agent of said soda fountain company and defendants acted together in effecting the contract of sale of said soda fountain and said refrigerating machine to plaintiff; that the defendants Way Engineering Company well knew the character of said refrigerating machine used; that, after said soda fountain had been contracted for by plaintiff and installed in his place of business, said defendants installed said refrigerating machine therein; that, at the time of the execution of the written contract executed by said defendants, they well knew the character of soda fountain plaintiff had contracted for and bought and well knew that the refrigerating machine sold by them to plaintiff was to be used in connection with said soda fountain purchased by plaintiff from said American Soda Fountain Company.

In the alternative, and in case the court should hold that the contract of sale should not be canceled, plaintiff alleged damages in the amount heretofore specified.

Plaintiff further alleged that he and defendants Way executed what purported to be a conditional sales contract at the time of the negotiations for said machine, which included a promissory note for said machine, payable in installments, and a warranty that said machine would do the things set out in the petition; that said writing did not contain all of the contract, representations, and

understandings between plaintiff and defendants relative to the purchase and sale of said refrigerating machine, nor was it intended so to do, but only that with reference to the payment of money by plaintiff, and the agreement of said defendants to deliver and install said machine as aforesaid, and its warranty that said machine would do the things set out in this petition; that said writing is in the possession of the defendants; and that, if said writing purports to contain any provisions other than those heretofore set out, then the same does not contain the true facts, nor was it the intention of plaintiff to sign or execute any instrument with provisions therein other than as set out hereinabove.

Plaintiff says that he would not have signed the contract containing such other provisions, and that, if it does contain such other provisions, it was due to the deceit and fraud of the defendants.

The Ways answered by a general demurrer, certain special exceptions, a plea of estoppel, a general denial, and a special plea that they entered into no agreement or stipulation or understanding with plaintiff relating to or concerning the refrigerating machine not mentioned in the written contract. They specially pleaded that the machine was in all respects in compliance with the terms of the written contract, and that, if it failed to do the work desired by plaintiff, such failure was not from any fault or defect in said machine, but because of defects in the soda fountain used by plaintiff in connection with said refrigerating machine.

The Southwest Purchase Corporation answered by a general demurrer, an adoption of the special exceptions urged by the Way defendants, and of the plea of estoppel, and by a general denial. By way of cross-action, the corporation alleged that it was a Texas corporation, and had for a long time been purchasing and dealing with contracts, obligations, and promissory notes made with and in favor of reputable manufacturers, agents, and others, and alleged that it purchased this note and contract without notice of any defect in the note or deception on the part of plaintiff. It prayed for judgment against plaintiff for the unpaid note, interest, etc.

The cause was submitted to a jury on special issues, the answers to which are hereinafter given:

(1) That the defendant Way Engineering Company and the agents of the American Soda Fountain Company acted jointly and together in the sale of the soda fountain and refrigerating machine.

(2) That, at the time the plaintiff contracted to purchase the refrigerating machine, the Way Engineering Company knew the character of soda fountain plaintiff was to use with said machine.

(3) That at such time the defendant Way Engineering Company recommended to plaintiff that said refrigerating machine was suitable to be attached to and operated with the said soda fountain he was contracting to purchase from the American Soda Fountain Company.

(4) That, prior to the time plaintiff contracted to purchase said refrigerating machine, the Way Engineering Company recommended to plaintiff that said machine, when attached to the said soda fountain, would refrigerate four packers of ice cream, and equal to the melting of 500 pounds of ice every 24 hours.

(5) That said statements were false, and that the defendant Way Engineering Company knew that they were false.

(6) That, at the time plaintiff contracted to purchase said refrigerating machine, he did not know anything about said machine other than what was told him by the engineering company.

(7) That, at the time plaintiff contracted to purchase the soda fountain from the American Soda Fountain Company, he did not know whether or not the machine in question would operate with said soda fountain other than what the engineering company told him, and that plaintiff acted upon defendants' representations to him as to the successful operation of the refrigerating machine with the soda fountain.

(8) That said machine and the said soda fountain were installed at the same time by the joint agents of the soda fountain company and the engineering company.

(9) That, after said refrigerating machine was installed, it did not furnish refrigeration equivalent to the melting of 500 pounds of ice each 24 hours, nor did it furnish refrigeration sufficient for four packers of ice cream, nor did it furnish refrigeration equal to 5 degrees Fahrenheit.

(10) That, after said refrigerating machine was installed, it did not operate to give plaintiff the service in accordance with the statements and recommendations of the engineering company, and that, after the installation, said refrigerating machine was of no value to the plaintiff.

(11) That plaintiff incurred necessary expense in repairing and working on said machine, to the amount of $160.04.

(12) That said refrigerating machine has been of no value to plaintiff and has no market value.

(13) That the defendant engineering company had not complied with its written contract of sale to the plaintiff, in that said machine failed to give sufficient refrigeration.

(14) That said machine would not have been capable of keeping four packers properly refrigerated if the soda fountain sold by the American Soda Fountain Company had been properly installed, and that the failure of the refrigerating machine to do

this was not due to the mechanical construction of the soda fountain.

Upon this verdict, the court rendered judgment for plaintiff as against the defendant Way Engineering Company, canceling the contract of purchase between the company and the plaintiff, except as to the Southwest, and found that plaintiff had tendered the machine in court, and gave judgment for plaintiff against defendant engineering company in the sum of $487.46, the amount paid by plaintiff as a part of the purchase money on said machine, and also $160.04, the amount expended by plaintiff in his efforts to operate said machine, and for all costs of court. Judgment was denied plaintiff for the cancellation of the four installments of the note unpaid, and judgment was given for the Southwest Purchase Corporation.' From this judgment, the defendant Way Engineering Company has appealed.

## Opinion.

Appellants have some 83 assignments of error, consisting of grounds set forth in their motion for a new trial, which are grouped under 27 propositions. We will not undertake to discuss all the propositions contained in the brief, but will dispose of the many assignments urged in a general discussion. We have examined the testimony shown in the statement of facts, and think that the allegations of plaintiff as to the following matters are amply supported by the evidence, to wit: (1) That appellants knew at the time plaintiff purchased the refrigerating machine that he intended and was in the process of purchasing a soda fountain from the American Soda Fountain Company. (2) That a Mr. Rouse, salesman and agent of the American Soda Fountain Company, to whom plaintiff went for the purpose of buying a draft arm for the fountain he was then using, discussed with him the purchase of a new fountain, and recommended the purchase of a Lipman machine, to supply dry refrigeration. Mr. Rouse went with plaintiff to see the Ways and Rouse and plaintiff talked with one of them, and it was understood by all parties that, if the Lipman machine was purchased, it would be used in connection with a fountain purchased from the American Soda Fountain Company. (3) The evidence further showed that the machine from the time it was installed never produced sufficient refrigeration to freeze and preserve four packers or containers of ice cream, and that only once while the installing agent was present did it reduce the temperature to 5 degrees Fahrenheit. Mr. I. Brown, the installing agent, testified that at the time of installation he reduced the temperature in the ice cream cabinet to 5 degrees below zero, which it appears he interpreted to be 5 degrees Fahrenheit. (4) While at the time of the installa-

tion and after the completion thereof, the plaintiff signed an "erecting engineer's release," addressed to the Way Engineering Company, in which he stated that upon the completion of the installation of the Lipman refrigeration machine, it conformed to specifications and was then in successful operation, and satisfactory and accepted, and that the plaintiff "released" the engineer, yet plaintiff was never thereafter, although he secured the employees and servants of appellant to help him so to do, able to reduce the refrigeration to the specified degree, or to operate the machine so as to refrigerate four packers of ice cream, and, even though there were only two containers used in the machine, the ice cream therein was not frozen to a sufficient consistency, but was soft and mushy on top. (5) The evidence further showed that plaintiff, during the some eight months prior to his refusal to pay any more on the note, complained by letter and in person to the appellant that the machine was not operating satisfactorily, and appellants promised to remedy the defect, but never did so.

One of the witnesses who testified for the appellants was John L. Clark, who was manager for the American Soda Fountain Company at Dallas at the time of the purchase of the soda fountain from said company and the Lipman machine from the appellants. He testified: That the Lipman machine did satisfactory work with certain kinds of soda fountains, but not with the kind of soda fountain purchased from his company. That the fountain sold plaintiff was not properly constructed for mechanical refrigeration. That "it lacks at least 50 per cent. having enough cork board; instead of three inches within the walls all the way around and that much at the bottom and two inches at the top, the fountain had no insulation over the top. It needed insulation at the top to keep the refrigeration from leaking out—to keep the cold in. With reference to how two inches at the top would conserve or hold the refrigeration furnished from the refrigerating machine, I will say it would not have let it leak out. It is necessary just as it is necessary to have a stopper in a thermos bottle." He further testified that a number of times plaintiff complained to him as district agent of the American Soda Fountain Company about the fountain sold to him, and that plaintiff told him that he was informed that the fountain was not properly built for mechanical refrigeration, and that it was the fault of the fountain; that "I countered by telling him that the fountain was just exactly according to specifications that his order called for, and that was all I could tell him and all I did tell him."

On cross-examination of this witness, it developed that he had been discharged by the American Soda Fountain Company from the position of district manager, and at the.

time of the trial was connected with the Ways Engineering Company in the manufacture and sale of refrigerating machines. He testified: That, when he was in charge of the district office at Dallas, when a man came to investigate the purchase of a soda fountain, they always took him to a man or a house having a refrigeration machine, and that they did so in this case. That, when Mr. Siddall came over to Dallas to buy a soda fountain, he did not know anything about the refrigerating business himself, but he got after plaintiff to sell him one of their soda fountains "just like we do with all customers. We did sell it to him, or traded it to him. We recommended it very highly. With reference to whether I told him this machine [the Lipman] would refrigerate it, I told him there was not any better on the market and would tell him so again to-day. A representative of the company and Mr. Siddall went to the Way Engineering Company where the machine was. Counsel asks me: 'And they said there at the Way Engineering Company they recommended that machine to refrigerate the kind of fountain they were getting from you?' and I answer, 'No, sir.' Way may have been or may not have been familiar with the soda fountain that we were selling Dan Siddall. We had sold some machines previous to that with Way's machine attached to it; the Caldwell job was sold before Siddall's. * * * As to whether I sent my office man over there with him, as I understand your question, you would have me say to the exclusion of everything else that I did not send my man over to the Ways with Dan Siddall to get this machine. Rouse went over there with him. I did not send him. He went of his own accord. He was one of the representatives then. Possibly Rouse and Dan and I were all talking together when we decided to go. We did not frame it up there in our place to send him over there. Anyhow, Rouse went over to Way's with Dan and took him over there. Here is what I have to have—all I want is the truth—as to recommending the machine, now the thought that I had and the information, and the answer was intended for that purpose. We did not fight for or recommend that machine to the exclusion of any other machine, for that has not been done within my knowledge, because there is the York and Frick, and those two, with the Lipman, we unreservedly recommend. As to why I did not send him to the other people, all three are equally responsible."

Plaintiff testified: That, at the time he was over at Dallas, he went to the office of the American Soda Fountain Company, and he told the agent of the company that he wanted to see them about the purchase of a cabinet, and the agent told him that they sold their fountains connected with a machine for mechanical refrigeration. "They said it was

the Lipman machine, and they told me that the Way Engineering Company was the agent for that machine. I saw the defendants Way that day; one of the salesmen of the American Soda Fountain Company took me over to their place of business, and I saw a Mr. K. W. Way and Mr. W. J. Way. They are two of the defendants in this cause. Mr. Rouse, of the American Soda Fountain Company, was with me. I stated to the Way people my business there. With reference to what was said by me or Mr. Rouse to Mr. Way, Mr. Rouse stated to the Way Engineering Company that I was anticipating the purchase of a mechanically refrigerated fountain, and stated to them what they expected to install if we should make a trade—if the American Soda Fountain Company and myself made a trade—and what the American Soda Fountain Company expected to install in connection with the machine they had recommended to go with it. Mr. Way and Mr. Rouse discussed the fountain and the make and what it would take to connect it to the fountain, and what they would have to connect to the fountain to keep the ice and water cold, and also the soda water which runs though a set of coils. The ice cream is kept in a cabinet; the cabinet holds the water, too, to make the soda water. That is connected through the fountain where the refrigeration takes place. * * * I did not make any representations to the Way people as to the character of machine I wanted or the character of refrigeration I would expect, but they made the statement to Mr. Rouse and myself what their machine would do when connected to this American Soda Fountain, the one I was anticipating buying from the American Soda Fountain Company. I did not close the trade that day. The contract that I made with the Way Engineering Company was finally reduced to writing, after I had had a conversation with Mr. Rouse."

This and other testimony to the same effect we think sufficiently shows that at the time of the purchase of the Lipman machine, the appellants understood what kind of fountain the plaintiff was expecting to purchase, and recommended to him the purchase of the Lipman machine to operate in connection therewith. The evidence further shows that the appellants had sold to various parties a Lipman machine, and, when used in connection with an American Soda Fountain, it did not work satisfactorily. W. J. Way testified to some of these sales, for instance the one at Waxahachie, and that he had had a number of "service calls" on that machine up to the time he sold to plaintiff.

[1, 2] Nor do we think the fact that the plaintiff had paid eight of the monthly installments on the note would estop him from claiming the right of rescission and cancellation, inasmuch as he testified that he had been trying all the time to get the Way En-

gineering Company to adjust the machine so that it would work, and that they had promised him to do so, but had failed, and in this he was corroborated by other testimony, including that of defendant W. J. Way. Nor do we think he is estopped by reason of writing the letter of acceptance and the statement that the machine was doing satisfactory work. This letter was written immediately after the installation of the machine, and before he had an opportunity to learn as to whether or not the refrigeration desired could be accomplished.

[3] It is urged under another proposition that there is no allegation in plaintiff's petition sufficient to charge appellants, or either of them, with having falsely or fraudulently made, at the time of or before the making of the contract of March 31, 1924, any false or fraudulent representations which became the *inducement* to appellee to *enter into* said contract, and that the trial court should have sustained appellants' special exception, pointing out such defect in the pleading. Plaintiff did allege that at the time of the execution of said written contract he was not familiar with refrigeration machines, and especially the Lipman machine, nor did he know how such machines should be installed, nor when they were correctly installed, nor when the machinery thereof was properly insulated and installed, and he acted upon and was controlled by the statements, the recommendations, guaranties, and warranties of the defendants, appellants here. He further pleaded that the defendants represented to him before the execution of the contract that the refrigerating machine he was thinking of buying would operate satisfactorily with the soda fountain he was thinking of purchasing, and he acted in reliance upon the truth of such statements. He then alleges that, upon the installation of the refrigerating machine, the agents and employees of appellants told him that it had been properly installed, properly insulated, and that it was ready for perfect operation, and that he relied upon such assurances. He then alleges that the machine failed to furnish the refrigeration provided for in such contract, and has never furnished it, but has been constantly and continuously out of repair from time to time, and plaintiff has been unable to obtain any service whatever from the use of said machine. While these allegations are not perhaps as definite as might be desired, in a suit for cancellation and rescission, yet we think they do sufficiently allege that he was induced to enter into the contract upon a reliance upon the truth of the statements and representations made by the appellants, and that such statements were false and fraudulent, and made for the purpose of inducing him to enter into the contract.

[4] Under another proposition, it is urged that the plaintiff failed to allege any offer to restore the "status quo ante, or to do equity, as required by law," and the trial court should have sustained the special exception of appellants pointing out such defect. In plaintiff's petition, the following allegation appears:

"That plaintiff was compelled, because of the failure of said machine to furnish refrigeration, to quit using it and close it down for a period of over six months; that said machine now will not furnish refrigeration nor has it ever furnished refrigeration since its installation by the said defendants; that since the filing of the original petition in this cause plaintiff has been compelled to take out and remove said machine from his place of business and store the same, subject to the order of the defendants; that said machine is useless, has no value to the plaintiff, nor has it any market value, and he here and now tenders said machine back to the said Way Engineering Company and asks for a rescission of the said contract."

We think such allegation, in view of the statement that the machine was of no value to the plaintiff and had no market value, and his offer to tender back to the appellants said machine, is sufficient to show, as found by the court, that the machine was of no value and had been tendered to the appellants before the trial.

[5, 6] Taking the case as a whole, including the pleadings and the evidence, we think that the judgment against defendants, founded on the findings of the jury upon questions of fact, must be sustained, in so far as such judgment gave relief. But we see no reason why the plaintiff was not entitled to recover against the appellants such amount of money as he should be required to pay in satisfaction of the four notes, for which the Southwest Purchase Corporation recovered against him. While we are not prepared to say that the contract, accompanying the note and being a part of the whole, did not present the question as to whether or not the note was negotiable and whether the Southwest Corporation was a purchaser without notice, yet we have concluded not to determine that question, but to reform the judgment below and allow plaintiff a recovery, in addition to the judgment rendered, for such sum of money as he may be required to pay in satisfaction of these four notes.

Therefore the judgment will be reformed as indicated, and, as reformed, will be affirmed.