## HAMMETT v. FARRAR et al.
### No. 1238—5272.

Commission of Appeals of Texas, Section A.
June 25, 1930.

Kemp & Nagle and Goggin, Hunter & Brown, all of El Paso, for plaintiff in error.

Turney, Burges, Culwell & Pollard, W. H. Burges, and J. E. Quaid, all of El Paso, for defendants in error.

CRITZ, J.

This suit was brought in the Forty-First district court of El Paso county, Tex., by Benjamin De Forest B. Hammett, hereafter called plaintiff, against Mrs. Guy Hammett Farrar and husband, and others. Mrs. Farrar died before the trial, and her devisees and legal representatives were made parties defendant. The suit was in trespass to try title and to recover an undivided one-half interest in certain real property in El Paso county, Tex. There was a judgment in the trial court based on an instructed verdict for the defendants. Plaintiff duly appealed from this judgment to the Court of Civil Appeals for the Eighth District at El Paso, which court in all things affirmed the judgment of the trial court, but corrected said judgment on a matter immaterial to any discussion here. 8 S.W.(2d) 236. The case is now before this court on writ of error granted on application of plaintiff.

The plaintiff's cause of action is based primarily on the following contract dated

November 27, 1923, between plaintiff on the one hand, and Mrs. Guy Hammett Farrar and husband on the other:

"This agreement entered into between Mrs. Guy Hammett Farrar, joined proforma herein by her husband, B. L. Farrar, of the first part and Benjamin De Forest Buel Hammett of the second part, all of El Paso County, Texas, witnesseth:

"That whereas the said Guy Hammett Farrar is the daughter of Mary S. P. Hammett and the said Benjamin De Forest Hammett is the grandson of the said Mary S. P. Hammett and is a nephew of Guy Hammett Farrar and both of said parties are legal and lawful heirs of the said Mary S. P. Hammett and have reason to believe that upon the death of the said Mary S. P. Hammett they will be named as legatees in the will of the said Mary S. P. Hammett and for the purpose of eliminating any unnecessary feeling or inequities that either may feel might arise, with reference to the legacies first above mentioned, it is herewith agreed between the said parties: That all property, other than family keepsakes or mementoes, inherited under the said will by the said Guy Hammett Farrar and all property, other than family keepsakes or mementoes, inherited under the will by the said Benjamin De Forest Buel Hammett, shall be joined together and divided equally, one-half thereof to the said Guy Hammett Farrar and the other one-half to the said Benjamin De Forest Buel Hammett.

"It being the intention of the parties hereto to divide equally all interests of a monetary nature inherited by either or both from the said estate of Mrs. Mary S. P. Hammett, so that each of the said parties shall enjoy an equal part of the said estate as inherited by both.

"The said Benjamin De Forest Buel Hammett is also known as Ben Hammett and as Buel Hammett, and is designated in either of the three ways by acquaintances, relatives, friends and associates.

"These presents are drawn as an assurance to Guy Hammett Farrar that she will profit equally in her mother's estate with her nephew Benjamin De Forest Buel Hammett and is drawn for the purpose of assuring the said Benjamin De Forest Buel Hammett that he will profit equally with his aunt, the said Guy Hammett Farrar in the distribution of his grandmother's estate."

This contract was executed and acknowledged by all parties in due form of law.

At the time the above contract was entered into Mrs. Mary S. P. Hammett had already made a will in due form of law, which will was dated November 29, 1921. We do not know whether the parties to the contract knew the contents of this will when the contract was made. Said will is as follows:

"State of Texas, County of El Paso.

"In the name of God, Amen: I, Mary S. P. Hammett, of El Paso, El Paso County, Texas, which said City of El Paso is my home and residence, being of good health and of sound and disposing mind and memory, and mindful of the uncertainty of life, and the certainty of death, do make and publish this, my Last Will and testament, hereby expressly revoking all previous wills, testaments, and codicils heretofore by me at any time made.

"Section One: I make, constitute and appoint my daughter, Mrs. Guy Hammett Farrar and her husband B. L. Farrar, independent joint executors of this, my Will, and of my estate and in the event that in any case they may not agree as to what should be done, I direct that Jos. U. Sweeney, shall decide the question at issue between them and if requested by either of them, he shall render his decision in writing. If under the law my said executors are required to evidence any contract, conveyance, lien or other thing in relation to my estate by an instrument in writing, and there should be a difference of opinion between my said executors as to the advisability of such contract, conveyance, lien or other thing, the said Jos. U. Sweeney shall manifest his decision by joining as such arbiter in the execution of such contract, conveyance, lien or other thing. In the event of the death, refusal to accept such executorship, disqualification, resignation or removal of any one of my said executors, then I make, constitute and appoint the said Jos. U. Sweeney, substitute executor to fill the vacancy thereby occasioned and he shall have all the rights, powers, duties and obligations of the executor whose place he has taken and the power hereinabove vested in him as arbiter shall terminate.

"Section Two: I direct that no bond or other security shall be required of my said executors or either of them, or of the said Jos. U. Sweeney, either as arbiter or as substitute executor and I direct that no other action shall be had in the County court in relation to the settlement of my estate, than the probating and recording of my will, and the return of an inventory, appraisement and list of claims of my estate, and as far as I lawfully can, I exempt the executors under this will from the control, supervision and jurisdiction of all Probate courts. If from any cause the number of executors hereunder should be reduced to one only that one shall have and exercise and discharge all the rights, powers, duties and obligations by this instrument vested in two executors.

"Section Three. My said executors shall have the power to sell and convey, assign and transfer any land, properties, things or asset of my estate not herein specifically devised or bequeathed, upon such terms and conditions as they deem best and the purchaser or pur-

chasers need not see to the application of the purchase money, but this power shall be exercised only for the purpose of enabling them more effectually to pay the debts of my estate which are not secured by a deed of trust, mortgage or express contract lien, the legacies hereinafter made, settle my estate, and exercise the rights, powers, and duties of this Will conferred on them and any conveyance, transfer or assignment of such land, properties, things or asset made by my said executors and purporting to have been made by virtue hereof shall be presumed in favor of any person claiming thereunder to have been made in accordance with the powers in said executors vested by virtue hereof.

"Section Four: Until the payment of the debts in section three above mentioned, and until payment of the legacies hereinafter given my said executors shall have the possession control and management of all the land, property, things or assets of my estate not herein specifically devised, bequeathed or given and shall devote the rents, revenues or proceeds thereof to such payment and to the defraying of their expenses and costs, charges and commissions as such executors.

"Section Five: I desire that my executors, shall allow my son Paul P. Hammett, my grandson, Ben Hammett, formerly known as B. F. Buel Hammett and my son-in-law B. L. Farrar to use and occupy free of charge as their business offices the following described premises, in the city of El Paso, El Paso County, Texas, and being the eastern portion of Lot 66, in Block 12, as the same is shown on the map of said City of El Paso, made by Anson Mills.

"Beginning on the south line of Texas Street 90 feet Easterly from the northwest corner of said Block No. 12 formed by the intersection of Mesa Avenue and Texas Street; Thence southerly with the Bassett property and parallel with Mesa Avenue 50 feet; thence westerly and parallel to Texas Street 10 feet; thence northerly and parallel with Mesa Avenue 50 feet; thence easterly 10 feet to the place of beginning.

"and such use and occupancy unless sooner terminated as below authorized shall continue as long as my said son, grandson, and son-in-law or the majority of them shall desire. But in the event that at any time my said executors may deem it best that such use and occupancy should terminate then and in that event such use and occupancy shall forthwith end.

"Section Six: In the event that the land, property, things or assets included in Section three hereof, and the premises described in section five hereof shall not be sufficient to meet, pay, or defray the debts, legacies, costs and expenses in Section three of this Will mentioned, then the deficiency, if any, shall be a charge upon the lands hereinafter specifically described and devised, that is to say that each parcel of land so described and devised shall be charged with an amount thereof proportioned to the value of said land as shown by the inventory and appraisement of my estate which is required to be made as a part of the proceedings relating to the probating of a will, but this charge upon the lands so charged shall not be enforced by my executors but the said charges may be met, settled or provided for by my daughter, Mrs. Guy Hammett Farrar, and by my trustees hereinafter mentioned in the manner that they respectively deem best, and in the event that they shall not do so, the parties interested may enforce the same, but in no case shall a pecuniary legatee have the right to enforce the same until expiration of twenty four months after the probating of my Will.

"Section Seven: In the event that the said Jos. U. Sweeney shall become an executor of this my will, and in the event that any other attorney at law shall become either an executor of this my will, or a trustee as hereinafter provided for, then said Jos. U. Sweeney and such other attorney or either of them may be employed to act as an attorney at law for either the executors or the trustees herein provided for and may receive a reasonable compensation and the said Jos. U. Sweeney may so act before he becomes such executor and while he is such trustee may be employed as an attorney at law by the executors and trustees or either of them, and receive a reasonable compensation for his services. The executors herein provided for, for their services shall receive five per cent of the cash paid out by them, and the trustees herein provided shall receive for their services five per cent of the cash received by them and five per cent of the cash paid out by them, but no executor or trustee shall in any one year receive as such more than twelve hundred ($1,200.00) dollars beyond expenses.

"Section Eight: I give the following legacies:

"To my niece Mary P. Wilson of Colorado Springs, Colorado, One thousand ($1,000.00) dollars.

"To my niece Mrs. J. W. Coglan, of Colorado Springs, Colorado, One thousand ($1,000.00) dollars.

"To my niece Sue Guy Hammett, wife of W. H. Hammett, Phoenix, Arizona, One thousand ($1,000.00) dollars.

"To Clementine Davis, wife of my grandson, Guy Hammett Davis, One thousand ($1,000.00) dollars.

"To Florence Connor, a woman of color, Fifty ($50.00) dollars.

"To my faithful friend and houseman, Lorenzo Carbajal, One hundred ($100.00) dollars;

"And in loving memory of my faithful mammy and nurse, Emily, I give one thousand ($1,000.00) dollars to the African Episcopal

Methodist Church, known as Visitors Chapel on the corner of Third and Tays Street, in El Paso, El Paso County, Texas, to be paid to the Treasurer of said Church, when satisfactory evidence has been produced that said Church has raised and has in bank the sum of One thousand ($1,000.00) dollars. The one thousand ($1,000.00) dollars, which I hereby give shall be applied by said church to the payment of its indebtedness if any, and in the event that said Treasurer does not produce such satisfactory evidence within two years after the probate of this, my Will, the said legacy of One thousand, ($1,000.00) dollars to said Church shall thereupon become null and void, and said sum of One thousand ($1,000.00) dollars, shall become and be a part of my residuary estate.

"Section Nine: I give to my beloved daughter, Mrs. Guy Hammett Farrar, the Hammett block at the corner of Mesa Avenue and Texas Street, comprising the westerly forty (40) feet approximately more or less of Lot sixty six (66) In Block Twelve (12) according to the Anson Mills Map of El Paso, Texas, and all improvements thereon, being all that portion of the Westerly ninety (90) feet by seventy nine (79) feet more or less of said Lot sixty six (66) not heretofore at one time, conveyed to my son, Paul P. Hammett, and A. Schwartz, to be held by the said Guy Hammett Farrar, my daughter, in fee simple as her separate estate.

"I wish my said daughter, her heirs and legatees, to assume and discharge the following obligations for twenty one years after my death: (a) Keep my lot in Evergreen Cemetery carefully looked after, and in first class condition and pay all expenses relating to same. (b) Keep up the custom adopted by me of placing the portraits of the Mayors of the city of El Paso, Texas, in the City Hall. Said portraits to be as large as any of those now in the City Hall.

"These requests in these two paragraphs, shall not be charged against the said Hammett Block herein devised to my said daughter or against anything she may receive by virtue of this will, but I trust to her affection to do as hereby requested.

"Section Ten: I give and bequeath my jewelry as follows: My turquoise and diamond set to my grandson, B. F. Buel Hammett; my diamond pin, Letter 'H' to my son, Paul P. Hammett, the ruby stud worn by my beloved husband and my mother's watch, to my grandson, B. F. Buel Hammett. Said stud and watch are now in a package, in a safety deposit box of the First National Bank of El Paso, Texas, and marked B. F. Buel Hammett. All of my other diamonds and jewelry to my daughter, Guy Hammett Farrar.

"Section Eleven: I give and devise to my daughter Guy Hammett Farrar and to her husband, B. L. Farrar, and to Jos. U. Sweeney, aforesaid of El Paso, El Paso County, Texas, to wit:

"First: An undivided one half in the D. R. Francis Block in the city of El Paso, Texas, comprising the east one half and ten (110) feet of the south one half (½) of Block ten (10) according to Anson Mills Map of the city of El Paso, Texas.

"Second: The other undivided one half (½) of the said D. R. Francis Block described in Clause No. 1 of this Section, and also Lots eleven (11) twelve (12) thirteen (13) and fourteen (14) in Block No. Two Hundred nineteen (219) of Campbell's addition to the city of El Paso, El Paso County, Texas.

"To have and to hold the premises described in the two clauses One and two of this Section of my Will described unto them the said Guy Hammett Farrar, and B. L. Farrar, and Jos. U. Sweeney, their heirs and assigns and successors in this trust forever, for the purpose, and upon the trusts in this Will hereinafter specified and not otherwise, and they the said Guy Hammett Farrar, B. L. Farrar and Jos. U. Sweeney, and their successors in this Trust are hereinafter styled and designated in this Will trustees.

"Section Twelve: I give and grant to the said trustees full power of control, management and disposition of the Trust premises and proceeds thereof in Section eleven mentioned or described. If they deem best they may borrow money on security of the Trust estate, and they may sell and convey, mortgage or otherwise encumber the same or any part thereof to better enable them to discharge their duties and to exercise their power under this trust, and the purchasers, mortgagees or other lien holder, shall not be required to see to the application of the purchase money or of the money secured by the mortgage or other lien. The Trustees may from time to time as they deem best, change the nature of the Trust property and convert realty into personalty and personalty into realty, but they shall not invest the trust estate in any real estate not situated in the then limits of the said City of El Paso, and it is my wish that they do not invest any portion of the Trust estate in personal property, bonds, stocks or other choses in action, unless such investment be manifestly and imperatively demanded by the best interests of the Trust estate. The trustees may from time to time build upon or otherwise improve the trust real estate as they deem best, and they shall have power to make and enter into all such contracts as they may deem best for the trust estate, and such contracts shall be binding upon the trust estate, and upon them as trustees, but not upon them individually.

"I desire the said Trustees to remember that this trust is created to provide for the maintenance and support of my son, Paul P. Hammett, during his natural life, and of my grandson B. F. Buel Hammett during his nat-

ural life, and it is not my intention or desire to accumulate a large estate for distribution at a distant day and the security of the trust estate, and of the investments made for it should be the principal that guides the trustees, and the hope of making larger returns should not induce them to make investments that are not as secure as can be reasonably expected in the transaction of human affairs.

"Section Thirteen: In changing or making investments the Trustees shall so provide that the conveyance, instruments, assignments and other papers evidencing their title or interest shall clearly show what portion, if any, of the property acquired is subject to this trust for the benefit of my son, Paul P. Hammett, and what portion thereof, if any, is subject to this trust, for the benefit of my grandson, B: F. Buel Hammett, and in no event shall the property charged with a trust for the one be in any wise disposed of, managed or incumbered for the benefit of the other and in their accounts and reports the said trustees shall carefully distinguish the transactions relating to the interest of my son, Paul P. Hammett from those relating to the interest of my grandson, B. F. Buel Hammett.

"Section Fourteen: The net income of the premises described in Clause First of Section eleven hereof or of its proceeds, as the case may be, shall be paid monthly to my grandson B. F. Buel Hammett during his natural life, and upon his death, leaving lawful descendants the said premises or its proceeds as the case may be and the interest of my grandson in this trust estate shall pass and be conveyed, transferred or assigned to such descendants per stirpes and not per capita. In the event my said grandson leaves no such descendants, the same shall pass be conveyed and assigned to the lawful descendants per stirpes and not per capita.

"Section Fifteen: The net income of the premises described in Clause Second of Section Eleven hereof or of its proceeds as the case may be, shall be paid monthly to my son Paul P. Hammett during his natural life, and upon his death, leaving lawful descendants the said premises or proceeds thereof, as the case may be, and the interest of my said son under this Trust estate shall pass, be conveyed, transferred or assigned as such descendants per stirpes and not per capita. In the event my said son leaves no such descendants, the same shall pass, be conveyed and assigned to my lawful descendants per stirpes and not per capita. The premises aforesaid situated in Block two hundred nineteen (219) of Campbell's addition to the city of El Paso, are incumbered in the sum of approximately thirty thousand ($30,000.00) dollars to secure a debt to Dr. Hill and the said premises in said block, and the interest of my said son therein are charged with the payment of said debt of approximately thirty thousand ($30,-000.00) dollars, and of any extension or renewal thereof, and the said trustees shall have full power anything hereinabove in this section contained to the contrary notwithstanding to accumulate a fund for such payment out of the income of said property and of its proceeds, as the case may be, and the said trustees shall have full power to agree with the owner of said incumbrances upon a change or shifting of the security or to an extension of said debt or to an anticipated payment thereof as they may deem best. I direct that while the said debt in this section mentioned is unpaid the said trustees shall so provide that my said son shall receive a monthly income of at less than two hundred fifty ($250.00) dollars out of his interest in the trust estate, and in the event of his marriage that monthly income may be increased to the sum of three hundred fifty ($350.00) dollars a month, and to provide this income the said trustees shall, if necessary, and possible anticipate the future income of my said son's interest in the trustee estate.

"Section Sixteen: In the event that my said son, Paul P. Hammett should die and leave a widow surviving him, the said trustees shall invest in real estate, or otherwise a sufficient sum to secure her during her widowhood and not longer, a monthly income of two hundred ($200.00) dollars. Such investment to be of such a nature and in such a form as the said trustees may deem best. And this provision for such widow shall be in lieu of any interest that such widow might otherwise have under the laws of the State of Texas, and she shall have no other interest in this trust estate, or its proceeds.

"Section Seventeen: In the event that either my son or my grandson should receive anything additional under the terms creating this Trust estate or under the residuary clause then and in that event the portions so received shall be held, managed and disposed of under the terms hereof relating to the interest in said estate of the person so receiving and the legal title thereto shall pass to and be vested in the trustees and subject to the provisions creating the Trust estate.

"Section Eighteen: The said trustees shall have full power of sale, conveyance, incumbrance and partition in order to better enable them to discharge their duties hereunder and they shall have all other powers of every name or nature not inconsistent with the terms hereof that may be necessary or advisable to enable them to better discharge their duties hereunder and they may make all partitions that may be necessary or advisable under the terms hereof.

"Section Nineteen: In the event of a vacancy in the matter of trustees the other two trustees shall by an instrument in writing duly acknowledged and recorded appoint a substitute trustee which said trustee shall have all the rights, power and duties of the

trustee in whose place he is named substitute trustee and this power of substitution shall be exercised from time to time whenever necessary even though it may become necessary to have as trustees three persons not specifically named herein as trustees, and who were all appointed substitute trustees by persons or some of them not named herein as one of the three original trustees and in the event that it be not possible or advisable to fill vacancies in the manner herein provided for, the District court of El Paso County, Texas, or any other court of competent jurisdiction shall have power to fill such vacancy or vacancies.

"Section Twenty: Neither my said son nor my grandson shall have power directly or indirectly to sell, convey, assign, transfer, or in any wise incumber his interest in the Trust estate hereby created for his benefit or in any wise anticipate the income herein provided for to be paid to him, and the income herein provided for to be paid to such son or grandson shall be paid to such son or grandson as the case may be and to no assignee, and the receipt of my said son or grandson as the case may be and of no other person shall be obtained for such payment of such income and the interest of my son and grandson and of each of them shall not be subject to their present or future debts or to such debts of either of them.

"Section Twenty-One: No trustee herein named or provided for shall be chargeable for anything other than his own misconduct and each trustee shall be answerable only for his individual acts and for such individual omissions as amount to misconduct or breach of duty or culpable neglect of duty in law.

"Section Twenty-Two: Should any of my beneficiaries under this Will contest this will, then and in that event the provision made in this will, for the person so contesting shall become and be null and void, and the share that would otherwise have gone to the beneficiary or beneficiaries so contesting shall go to the beneficiary or beneficiaries who do not contest.

"Section Twenty-Three: In the event that by the terms of this Will any portion of the trust estate or of its proceeds, shall pass to a minor or minors, then and in that event the trustees shall remain in full control and management of the entire trust estate and of its proceeds with all the powers of every nature herein conferred upon them, until the youngest minor to whom any portion of the trust estate or its proceeds, shall pass by virtue hereof, shall, have attained the age of twenty-one years, and during such minority the trustees shall pay to the persons whether majors or minors that portion of the net income of the trust estate or of its proceeds to which they may respectively be entitled, and when the last of such minors shall be twenty-one years of age, the trustees shall transfer,

assign, convey and make over the trust property and its proceeds to the person or persons thereunto entitled, but such distribution shall at all events be made at the expiration of twenty-one years from the death of the last survivor of the two persons to wit: My son and my grandson, for whose benefit in the first instance this trust was created.

"Section Twenty-Four: I direct that no bond or other security shall be required of the trustees herein provided for, or of any of them, and I do further direct that the said trustees shall from time to time, but at least once a year, make out and present to the persons being majors who may then be entitled to the income of the trust estate a full statement in writing showing the condition of that portion of the Trust estate, to whose income such person or persons may be entitled to.

"Section Twenty-Five: In the event I shall die possessed of or entitled to any property, premises, asset or thing that is not disposed of by the other terms of this will, then and in that event I give, bequeath and devise the same, one third to my said daughter in full ownership, and two-thirds to the trustees aforesaid who shall hold one-half of said two-thirds for the benefit of my said son and the other half for the benefit of my said grandson, and the terms creating this trust estate and regulating the same, shall all apply to the said two-thirds which I give, bequeath and devise to said trustees.

"Section Twenty-Six: I suggest to the trustees herein that my present residence, being the second floor consisting of six rooms at No. 319 Mills Street, in the D. R. Francis Building, be utilized by them if in their discretion they deem it advisable for use as the home of my son, Paul P. Hammett, and my grandson, Ben Hammett, as long as they or either of them desire without any rent or charge of any nature whatsoever against them or either of them for such use. But I specifically direct that this shall be wholly in the discretion of the trustees to determine whether or not it should be so used, and to terminate such use when in their discretion it may be advisable to do so.

"Section Twenty-Seven: When in this will, it is provided that in certain events property is to pass to 'descendants' it is not meant that anything shall pass to a descendant whose ancestor or ancestress under and through whom such descendant would claim, is then alive but such property shall pass to such ancestor or ancestress.

"In witness whereof, I have hereunto set my hand at El Paso, Texas, this the 29 day of November, A. D. 1921, in the presence of W. H. Anderson, and W. B. Glardon, who attest same in my presence, in the presence of each other and at my request.

"Mary S. P. Hammett, Testatrix.

"The foregoing instrument which without the signature clause has nine pages, and twenty-seven sections was subscribed on this the 29 day of November, A. D. 1921, by Mary S. P. Hammett, the testatrix, in our presence and we at her request, and in her presence and in the presence of each other, sign our names as attesting witnesses.

"W. H. Anderson
"W. B. Glarson"

On December 5, 1923, after the making of the contract made the basis of this suit, and after the execution of Mrs. Hammett's said will, the said Mrs. Mary S. P. Hammett executed and delivered to Jos. U. Sweeney, her attorney, of El Paso county, Tex., the following instrument of writing:

"The State of Texas, County of El Paso.

"Know all men by these presents: First: That I, Mary S. P. Hammett, a femme sole, of the city and county of El Paso, Texas, wishing to provide for my children and grandchildren and to secure the proper management of my estate, and that I shall receive therefrom all that is necessary for my support, maintenance care and other purposes, and having full faith and confidence in Jos. U. Sweeney of El Paso, El Paso County, Texas, for and in consideration of the premises, and of the payment to me by the said Jos. U. Sweeney, of the sum of One dollar ($1.00) the receipt of which is hereby acknowledged, have bargained and sold and do by these presents hereby sell grant and convey unto the said Jos. U. Sweeney, the premises in El Paso, El Paso County, Texas, described as follows to wit:

"The East 110 feet of the south ½ of Block 10, Mills Map of the city of El Paso, Texas. All of Lots 11 to 14, in Block 219, Campbell's Addition to the city of El Paso, Texas; That certain 47½ feet fronting on Mesa Avenue by 90 feet fronting on Texas Street, in Block 12, Mills Map of the city of El Paso, Texas, being the northwest corner of said Block 12, fronting on Mesa Avenue and on Texas Street.

"together with all the rights, hereditaments and appurtenances unto the same belonging.

"To have and to hold the said property unto the said Jos. U. Sweeney, his heirs and assigns forever, in trust, for the purposes and uses hereinafter set forth.

"Second. The said Jos. U. Sweeney, as said Trustee shall have full power and authority to take possession of, control, utilize, and manage the premises aforesaid; he may and can rent the same, or any part thereof, to such persons upon such terms and for such periods of time as he may deem best; he may and can and shall if he deems best, sell, and convey the said premises, or any part thereof, upon such terms as he deems best and if he shall deem best, he may can and shall mortgage and encumber the same by deed of trust, Mortgage or otherwise for such purposes as he may deem best and particularly he shall have power to renew or extend any mortgage, lien or encumbrance that may now exist upon said property or any part thereof, and that upon such terms and conditions as he may deem best.

"Third: The said Jos. U. Sweeney, shall receive all of the rents, profits, income, produce or proceeds of the trust estate and shall devote the same to the following purposes:

"He shall pay therefrom all taxes, insurance, assessments and the amount necessary for repairs and he shall, out of the remainder, pay unto me, as often as may be necessary for my support, care, maintenance and other proper purposes, in a manner proportioned to my estate, and previous manner of living, such sums of money as may be necessary for my support, care, maintenance and other proper purposes.

"Fourth: He shall then set aside monthly such a sum as may be necessary and advisable to establish a fund out of which the more permanent and extensive repairs and alterations of the trust estate can be paid and he shall be the judge as to the amount necessary to form this fund and of the repairs or alterations that are advisable.

"Fifth: He shall then pay to my niece, Mary Wilson, the sum of twenty-five dollars ($25.00) a month.

"Sixth: The remainder of the net income of the trust estate shall be divided into three equal shares, which shall be paid monthly, as it accrues, one share to my daughter, Guy Hammett Farrar, one share to my son, Paul P. Hammett, and the remaining share to my grandson Benjamin DeForest Buell Hammett, also known as Ben Hammett, and Buell Hammett.

"Seventh: My said trustee, the said Jos. U. Sweeney, shall, if he deems it necessary, change the nature of my estate from realty to personalty and from personalty to realty from time to time as he may deem necessary, but I urgently and earnestly advise that this never be done, unless, in his opinion, it is absolutely necessary for the interest of the estate so to do.

"Eighth: If in the opinion of my said trustee, Jos U. Sweeney, best to do, he the said trustee may raise money by mortgage, deed of trust or other lien on the trust property, or any part thereof, and devote the same to the improvement of the trust property or any part thereof.

"Ninth: The said trustee, Jos. U. Sweeney, shall receive for his services as trustee, the sum of One Hundred dollars ($100.00) per month which shall be considered as a part of the necessary expenses of this trust but which shall be subject to the priority which is here given to taxes, assessments and in-

surance and to sums necessary for my care, support, maintenance and other proper purposes hereinabove mentioned.

"Tenth: Upon my death the said Jos. U. Sweeney, shall by proper conveyance, instrument or proceedings, immediately after my death, convey, assign and transfer the entire trust estate then subject to the terms of this trust to my daughter, Guy Hammett Farrar and her husband, B. L. Farrar and to himself, the said Jos. U. Sweeney, the trustees mentioned in my will, dated the 29th day of November, 1921, and executed in the presence of W. H. Anderson, and W. B. Glardon, subscribing witnesses to be by them, the said Guy Hammett Farrar and husband B. L. Farrar and Jos. U. Sweeney, trustees, held, managed, controlled and administered in a manner with the power, and for the purposes and for the persons in such will specified. And the directions and provisions of said will shall, in all respects be carried out when not directly in conflict with the terms of this instrument. But I now here direct that the property estate or interest in said will set aside for the benefit of my grandson, Benjamin DeForest Buell Hammett, be by the trustees of said will mentioned, conveyed, assigned, transferred and set over to him, my said grandson, two years after my decease free and discharged from the trust by the said will created so that my said grandson shall possess, own and enjoy the same in fee simple.

"Eleventh: If my said grandson should die before the expiration of the two years aforesaid, leaving lawful descendants or issue then and in that event the share or estate which my said grandson would have received if alive shall be held, managed, controlled and disposed of by the said trustees provided for in said will in the same manner as if I had not herein provided for any change affecting said will, save and except, that if my said grandson, Benjamin DeForest Buell Hammett shall marry and shall die before the said two years, leaving surviving one who will then be his widow, I direct that his said widow, during her natural life, and during her widowhood, shall receive from the trustees under my said will, the net income of that portion of the estate embraced in the trust contained in the said will, that my said grandson would have received if alive at the end of the two years from my said death, but she, the said widow, shall receive said income personally and she shall have no right or power to sell, assign, or transfer or in any wise encumber her right to receive the same and it shall be in no wise subject to her debts. And if my said grandson should so die without surviving descendants and leave such widow my said trustees shall provide for the reasonable support and maintenance of such widow during her widow-hood out of that portion of the trust estate, that the said grandson would

have received if he had survived me more than two years and her right to such support shall not be in anywise transferrable by her or subject to her debts.

"Twelfth: The said Jos. U. Sweeney shall make, convey, transfer or assign to the trustees in said will by conveyance, declaration of the trust or any other proper method, the trust estate and he shall do so in such a manner as to give full effect to the terms and purposes of this instrument.

"Witness my hand this the 5th day of December A. D. 1923.

"Mary S. P. Hammett.

"The State of Texas, County of El Paso.

"Before me, the undersigned authority, a Notary Public, in and for the county of El Paso and State of Texas, on this day personally appeared Mary S. P. Hammett, a femme sole, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this the 5th day of December A. D. 1923.

"R. M. Reed,

"Notary Public, El Paso County, Texas.
"[Notarial Seal.]
"Witnesses:
    "L. G. Witherspoon M. D.
    "S. E. Harvey."

This last instrument was filed for record in the office of the county clerk of El Paso county, Tex., on the day of its execution. Also as soon as the last instrument was executed and delivered, and some time before the death of Mrs. Mary S. P. Hammett, Jos. U. Sweeney, the grantee named in said instrument, took charge and went into possession of the properties conveyed therein and thereby, and exercised all the powers of trustee conferred by said instrument during the balance of the life of Mrs. Mary S. P. Hammett.

After the death of Mrs. Mary S. P. Hammett, the above will was duly probated in the county court of El Paso county, and the last-quoted instrument was also probated as a codicil to said will, but the judgment probating said last instrument as a codicil recites:

"It is therefore ordered, adjudged and decreed by the court that the said instrument offered by Benjamin D'Forest Buell Hammett as a codicil to the said last will and testament of the said Mary S. P. Hammett, deceased, is hereby admitted to probate, and record as such codicil, and the testimony shall be recorded in the Minutes of this court, although B. L. Farrar and Guy Hammett Farrar, both individually and as designated executors, and Paul P. Hammett objected to the Probating of the deed of Mary S. P. Hammett, to J. U. Sweeney, dated December 5, 1923, on the trust therein mentioned as a

codicil to her will, and excepted to the Probating of the same as a codicil.

"It is therefore the order of this court, that nothing in this order contained shall be construed as a decision that the said deed of trust from Mary S. P. Hammett to J. U. Sweeney, did not take effect in the life time of the said Mary S. P. Hammett immediately upon its execution."

Plaintiff claims title to an undivided one-half interest in the real property herein sued for under and by virtue of the contract above quoted of date November 29, 1923.

The Court of Civil Appeals based their decision of this case on a construction of said contract, holding in effect that said contract was an agreement on the part of a married woman to convey a future expectancy in real property, and not a present conveyance of a future expectancy, and was void and unenforceable.

■ We are not in accord with such holding of the Court of Civil Appeals, but on the other hand are of the opinion that the contract or instrument is a present conveyance of a future expectancy; but, notwithstanding these views, we think the judgment of the Court of Civil Appeals should be affirmed on other grounds as will later appear in this opinion.

In order to ascertain whether the contract of November 27, 1923, can be a basis of recovery herein, we must first construe same in order to determine what property it conveys. A careful reading of this instrument clearly discloses that it, considered in the most favorable light for plaintiff, only conveys what the parties to said contract expected to receive by inheritance or devise from Mrs. Mary S. P. Hammett, and, unless the property herein sued for was so received by Mrs. Guy H. Farrar, it is not covered by said contract.

■ This brings us to a consideration and construction of the instrument of date December 5, 1923. A careful reading of this instrument shows that it is a deed absolute in form and took effect as soon as it was executed and delivered. It uses the words grant, sell, and convey, which terms, under the common law, and the Texas statutes, mean a complete alienation. They are words of present conveyance, not of devise. The instrument was delivered to the grantee named therein on the same date it was executed, and filed for record on the same date. It is an absolute conveyance without limitation, except by its own terms, and these are the conditions, uses, and purposes of the trust. As

soon as it was delivered Jos. U. Sweeney held the legal title to the property as trustee, for the benefit of the beneficiaries named, and for the purposes provided. The will is referred to as a part of the trust deed. The effect of this is to make the words of the will a part of the trust deed, except where inconsistent with the deed. This would be true, even if the will had never been probated. In other words, it was not necessary to even probate the will to give complete effect to the trust deed. Had Mrs. Mary S. P. Hammett changed said will, or made a new will, which she had a right to do, so far as the will as such was concerned, still the will referred to and made a part of the deed would still have been in force, not as a will, but as a part of the deed, and Mrs. Hammett could not have altered or changed the deed or its legal effect by making another will. The properties and rights conveyed by said deed were irrevocable by Mrs. Hammett, and took effect as soon as the deed was delivered. It therefore follows that Mrs. Farrar took the property sued for in this cause by operation of the deed, and not by devise or inheritance, and that the instrument or contract made the basis of this suit does not, by its very terms, embrace the same.

■ It seems to be contended that the fact that the deed of trust was probated as a will gives it the force and character of a will as long as such probate stands. The statute provides for the probate of wills, not deeds, and any order of a probate court probating a deed as a will, when it is not in law or in fact a will, would not constitute it a will. Besides this, the order admitting the deed to probate expressly calls it a *deed of trust*, and provides: "It is therefore the order of this court, that nothing in this order contained shall be construed as a decision that said deed of trust from Mary S. P. Hammett, to J. U. Sweeney, did not take effect in the lifetime of the said Mary S. P. Hammett immediately upon its execution."

Since the instrument made the basis of this suit does not have effect to convey property received by Mrs. Farrar by operation of the deed hereinabove quoted, there is no basis for plaintiff's claim to the one-half interest in the properties sued for, and we therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed.