**CORBELL et al. v. KOOG et al.**

**No. 9499.**

Court of Civil Appeals of Texas. Austin.

June 20, 1945.

Rehearing Denied July 11, 1945.

W. S. Leslie and E. E. Murphy, both of San Angelo, for appellants.

O'Neal Dendy, B. W. Smith, and Kerr & Gayer, all of San Angelo, for appellees.

McCLENDON, Chief Justice.

This is a will contest case in which the will of C. B. Mitchell, deceased, was sought to be probated. The proponent is Mrs. Corbell, named as independent executrix of the will, joined by her husband; and the contestants are Mrs. Koog, joined by her husband, and Mrs. McGlasson, sisters and sole heirs at law of the testator. Two grounds of contest were alleged: (1) Undue influence; and (2) revocation. The case was tried to a jury and submitted

upon the single issue of revocation; and upon the jury's finding that the will had been revoked, its probate was denied. The proponent has appealed, urging reversible error in the following respects:

1. In permitting Mrs. Lottie P. Mitchell, the divorced former wife of testator and sole beneficiary in the asserted revoking will (offered solely as a revocation and not for probate), to testify to conversations and transactions with testator in contravention of Art. 3716, R.C.S., commonly known as the dead man's statute.

2. Insufficiency of the evidence to support the judgment.

3. In giving a general charge on the burden of proof in connection with the issue of revocation; and

4. Improper argument of counsel. This last ground presents some interesting questions in connection with bystanders bills of exceptions; but since we are sustaining the first ground, and the issues presented in the fourth are not likely to recur on another trial, we will pretermit their discussion.

The following general statement will suffice to a clear understanding of the issues presented in the first three grounds:

Testator and Lottie Pearl Mitchell were married in 1903 and divorced about 1916. They remarried in 1925 and were again divorced in 1934. At that time they were living in San Angelo, where testator owned a filling station. He also owned a ranch not far from San Angelo. About the time of or shortly after the second divorce testator made his home with the Corbells who were in his employ at the filling station. The Corbell family consisted of Mr. and Mrs. Corbell and three sons, the youngest of whom, Willie or Billie, was nine years old in 1938, when the will in issue was made. Testator and the Corbells moved to the ranch in 1938. They lived in separate houses, but testator took his meals with the Corbell family, and apparently became very much attached to Willie. The will was dated August 8, 1938. It was drawn by a member of a law firm in San Angelo, witnessed by another member of the firm and by an employee of the firm, and left with the firm for safe-keeping. It named Mrs. Corbell independent executrix without bond and gave her large powers regarding sale of his property. After providing for payment of his debts and erection of suitable monument over his grave, all his property was devised to Mrs. Cor-

bell in trust for "my little friend, Billie Carroll Corbell." The trustee was given large powers over the personal property but no power to sell real estate. Billie was to be allowed to manage the property when he became 21 years old, but could not sell real estate until he reached the age of forty, when his title should become absolute. The trustee was authorized to give financial assistance to "my former wife, Lottie Pearl Mitchell," and to his sister, Mrs. McGlasson (then Mrs. Long), in case either of them should be "in want." This was left entirely to the discretion of the trustee. In the event of Billie's death before that of testator, or before Billie reached the age of twenty-one, Mrs. Corbell was made sole beneficiary under the will, and in case both died prior to testator or prior to Billie's reaching the age of twenty-one Mr. Corbell was made sole beneficiary. About the time this will was made, there seems to have arisen an estrangement between testator and his other sister, Mrs. Koog, on account of a will made by a brother of testator in favor of Mrs. Koog, the probate of which was contested by testator and Mrs. McGlasson. The revoking will was testified to by two witnesses, Al Colbaugh, a long time friend of Mitchell, and Mrs. Phillips, a daughter of Mrs. McGlasson. Each of these witnesses testified that Mitchell showed him (or her) a paper all in his own handwriting, which was dated San Angelo, Texas, July 1943. It stated that it was Mitchell's last will and that he was willing his entire estate to Lottie Mitchell, that he revoked all former wills, and requested that a monument be placed over his grave and one over his mother's grave. As to Colbaugh, this occurred in October or November, 1943, and as to Mrs. Phillips on July 26, 1943. Mitchell died January 17, 1944, and application to probate the will was filed in the County Court of Tom Green County, January 20, 1944. A contest of the will was filed February 2, 1944, by Mrs. Mitchell (alleging that she was the wife of Mitchell), Mrs. Koog, and Mrs. McGlasson and husband. This contest denied generally the allegations of the application and alleged that the will was "not executed as required by law," and that it was not the last will and testament of Mitchell. April 10, 1944, proponent filed a reply to Mrs. Mitchell's "original answer," in which it was alleged that she was not the wife of Mitchell at the time of his death (having been divorced from him)

and was not a proper party to the proceeding. The same day Mrs. Mitchell filed a motion requesting permission to withdraw from the contest and "to dismiss her contest without prejudice." This motion was granted the same day and her contest was "dismissed without prejudice to the said Lottie P. Mitchell." The amended contest of the two sisters filed in the District Court upon which they went to trial, after alleging undue influence, plead revocation as follows:

"That this influence, and the effect thereof on the mind and actions of C. B. Mitchell, afterwards began to play out; and one of his first acts, when the effects of such influence began at intervals to subside a little, was his revocation of the instrument filed as a purported will by the Proponent in this case. He revoked it by written instrument, dated during or about the month of July, A. D. 1943, duly executed by the said C. B. Mitchell in the manner and form provided by law. Though often demanded, the Proponent in this case, and her attorneys, have failed and refused to deliver the same to these Contestants, and they still so fail and refuse; and they are here notified that unless they produce such revocation upon the trial of this case, the evidence of its contents will still be introduced by these Contestants."

It was the theory of contestants that, some time after the 1938 will, Mitchell's feelings toward Mr. and Mrs. Corbell and Billie began to cool and he began going "back home," that is, to Mrs. Mitchell's. This theory is supported mainly by testimony of Mrs. Mitchell. There was also corroborating evidence in statements made by Mitchell to several witnesses, and some expressions in a letter he wrote November 9, 1943, to one of the older Corbell boys who was in military service. Mrs. Mitchell testified in this regard that she had been sick for some time and was not able to get any milk, and Mitchell "commenced coming home" and brought her milk every morning and sometimes eggs and butter; had her to "fix him something to eat," and she washed his clothes. This continued up to October, 1943, when Mitchell became ill and she went out to the ranch and stayed with him; she thought "a couple of weeks, off and on." He got up from that illness, and in January, 1944, became suddenly ill, and Mrs. Corbell brought him to her house. "He wanted to come home." He died there in a little over a week, during which time Mrs.

Mitchell took care of him. She further testified: "About three days before he died he told me to come and sit beside the bed, and I sat down and he said: 'Lottie, I am going to die; I know I am not going to get well. I want to tell you I have left enough to you to keep you the rest of your life. We have raised Irene Phillips and she is just the same as our child, and I want you to take care of her, and I want her to take care of you; if one of you gets sick I want the other to take care of her. If you will take care of what I am leaving you, you will have enough to keep you the rest of your days.'"

He further told her to tell Mrs. Corbell "to bring a black box from the ranch" and he said: "In that box is the watch you bought for me and another wrist watch, and a ring with a set in it, and also the papers I want you to have are in that box—enough to keep you the rest of your days." She said Mitchell told Mrs. Corbell "the same thing * * * but she didn't do it. When she came the next day" witness asked her about it, and "she said she forgot it" Later when asked about the box by Mrs. Mitchell, Mrs. Corbell said her attorney had it. The attorney testified that he went through all the papers in the box and delivered to the administrator such as had bearing on his duties, but that there was no will in the box.

While we have found no case on all-fours with that at bar, it is quite clear that Mrs. Mitchell's interest in the controversy was such as to disqualify her as a witness to conversations and transactions with Mr. Mitchell under the principles now thoroughly established by adjudicated cases. The rule may now be regarded as elementary that "the term 'parties' embraces not only parties of record, but also all parties who have a direct and substantial interest in the matter litigated." 14 Tex.Jur. p. 322, and authorities cited in note 7. "The object of the act, excluding parties from testifying as to transactions with deceased persons, would be defeated by allowing one to testify to such transactions who was as fully interested in the result of the suit as any of the persons named as parties upon the record." Simpson v. Brotherton, 62 Tex. 170. And the test of whether there is a disqualifying interest within the meaning of the rule is whether the witness "will be bound by any judgment which may be rendered under

the pleadings." 14 Tex.Jur., p. 323 and authorities cited in note 8; see also Lehman v. Howard, Tex.Civ.App., 133 S.W.2d 800, opinion by Judge Alexander, then on the Waco court. It is of course manifest that Mrs. Mitchell's interest in the estate as sole beneficiary under the revoking will would be defeated by a judgment admitting the 1938 will to probate; and equally manifest that a judgment denying such probate would leave such interest intact. If she had offered the 1943 will for probate, clearly she would be a party at interest within the statute. On the other hand, the fact that she did not offer the 1943 will for probate would not bar her from doing so later in case probate of the 1938 will were denied. See Davidson v. Gray, Tex.Civ. App., 97 S.W.2d 488. It is to be noted that Mrs. Mitchell's contest in the County Court was dismissed expressly without prejudice to her rights at her request. So far as the record shows she has never renounced or disclaimed any interest under the 1943 will, and is as free after as before the judgment denying probate to the 1938 will to assert such interest by offering the 1943 will for probate. It was of course to her interest to defeat probate of the 1938 will; and obviously that interest would be subserved by her testimony. The inducement for collusion between her and the two sisters is apparent.

An analogous situation is that presented in determining whether a party has such interest as will authorize him to contest a will. The general rule is thus stated in 28 R.C.L. p. 387, § 390: "It is also well established that persons who are beneficiaries in a will have such an interest as entitles them to contest another alleged will of the same testator which would destroy or reduce their share in his estate." There is a quite extensive case note on this subject in L.R.A.1918A, at page 470. It is there pointed out that: "The principal controversy in this class of cases has been as to the necessity of the beneficiary's proving the will under which he claims, or the extent to which he must go in proving its validity before he can contest the other will. The authorities on this question hold in general that probate of the will under which the contestant claims is not necessary, but that the contestant has the burden of proof and must make out at least a prima facie case as to the validity of the will under which he claims."

The evidence introduced by contestants was clearly sufficient; we think, to show prima facie the validity of the 1943 will at the date of Mitchell's death; and to establish Mrs. Mitchell's right to contest the 1938 will; and by parity of reasoning to disqualify her as a witness under Art. 3716.

We are not, of course, unmindful of the distinction between a mere act of revocation and the execution of a subsequent revoking will; as pointed out in Brackenridge v. Roberts, 114 Tex. 418, 270 S.W. 1001. No such issue is presented here as regards the question of competency of Mrs. Mitchell's testimony.

■ From what has already been·said it is clear that the evidence was sufficient to support the judgment on the issue of revocation.

Upon the third ground of error: The issue submitted read:

Special Issue No. 1: "Do you find from the evidence that C. B. Mitchell revoked the will dated August 8, 1938, and offered in evidence as proponents' exhibit No. 1? Answer yes or no. Answer ———.

"The burden of proof is on proponent to show that the instrument dated August 8, 1938, and offered in evidence as proponent's exhibit No. 1 was not revoked by C. B. Mitchell.

"If you find from a preponderance of the evidence that C. B. Mitchell did not revoke the instrument inquired about in special issue No. 1, you will answer 'No'; otherwise you will answer 'Yes'."

The objection to the charge was: "because same unduly emphasizes the burden of proof, and because the burden of proof is fixed by the method of framing special issue No. 1, and improperly advises the jury where the burden of proof lies."

■■ It is not contended that the burden of proof was not on proponent to show that the 1938 will had not been revoked. Brackenridge case, above. To have framed the issue so as to have it carry its own burden of proof would have required a double negative which has often been criticized. Rule 277, T.R.C.P., provides: "It is proper to so frame the issue as to place the burden of proof thereon, but where, in the opinion of the court, this cannot be done without complicating the form of the issue, the burden of proof on such issue may be placed by a separate instruction." We think the objections were properly overruled. See Gulf, C. & S. F. R. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795. If by the ob-

jection that it "improperly advises the jury where the burden of proof lies" it was intended that the jury were improperly advised as to the effect of their answer, the error, if any, was harmless for the reason that the effect of their answer was apparent and must have been known by the jury. See Galveston, H. & S. A. R. Co. v. Harling, Tex.Com.App., 260 S.W. 1016.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.