## SANDERS v. MAXWELL.

### No. 15489.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 26, 1954.

R. B. Gambill, Hopkins & Hopkins, and Geo. M. Hopkins, Denton, for appellant.

Coleman & Whitten, Denton, for appellee.

RENFRO, Justice.

Appellee Elma Maxwell offered for probate in the County Court of Denton County an instrument purporting to be the last will and testament of T. C. Sanders, deceased. A contest was filed by appellant

Maie Sanders, surviving wife of T. C. Sanders. From an order refusing probate of the instrument, Elma Maxwell appealed to the District Court of Denton County. In that Court a judgment was entered directing the instrument be probated, and from that judgment Maie Sanders has appealed to this court.

The appellant on appeal contends: (1) appellee failed to prove the instrument offered was wholly in the handwriting of T. C. Sanders; (2) that the witness W. C. Adams was incompetent under Article 3716, R.C.S., to testify to the signature of T. C. Sanders and to certain conversations between the witness and the testator; (3) the instrument offered for probate was merely a memorandum and was not a complete will; (4) the uncontradicted evidence showed that appellee exerted an active and undue influence on T. C. Sanders which resulted in the making of an unnatural will.

Trial was before the court without a jury. Extensive findings of fact and conclusions of law were filed by the trial court. Material to the appeal they are:

"1. That on the 19th day of December, A. D. 1949, T. C. Sanders, being one and the same person as Thomas C. Sanders, wrote out an instrument which he intended to be his last Will.

"2. That such instrument was written wholly in the handwriting of the said T. C. Sanders on said date, and that such fact was established by the testimony of more than two credible witnesses in open court.

"5. That the said T. C. Sanders never revoked said Will, and that it was his last Will.

"8. That T. C. Sanders owned an undivided interest in the Estate generally known as the J. H. Sanders Estate, which was the separate property and estate of T. C. Sanders, and that said T. C. Sanders never had any child or children, and made no disposition of his interest in the community property of himself and his wife, Maie Sanders, but permitted the community property to go according to the laws of descent and distribution by omitting any reference thereto in the Will were to go to Elma Maxwell, the proponent, and by omitting any reference to or disposition of the community property, it would go to his wife; that Elma Maxwell had befriended and helped T. C. Sanders on Different occasions, was related to him by blood.

"9. That the said. T. C. Sanders wrote said will of his own free accord without anyone influencing him, and that the said Elma Maxwell helped him spell certain words at his special instance and request."

The court found that the will was wholly in the handwriting of T. C. Sanders. The witnesses, W. C. Adams, Dr. Harry Taylor and Mrs. Wayne Adams, testified they were familiar with the handwriting of T. C. Sanders and in their opinion all the instrument was in his handwriting. The witness Mrs. Ella Maxwell and the witness George Coulter, the latter called by appellant, testified that they were present when Sanders wrote the instrument and he wrote all of it himself. There was no evidence contradicting the above testimony. Indeed, there was no contention in the trial court or in this court that Sanders did not write the instrument wholly in his own handwriting, appellant merely challenging the sufficiency of the testimony offered to prove that the instrument was wholly in the handwriting of Sanders.

■ Under the provisions of Article 3344, § 4, R.C.S., Vernon's Ann.Civ.St., a will wholly written in the handwriting of a testator may be proved by two witnesses to his handwriting. The evidence above, especially in the absence of contradiction, was sufficient to meet the requirements of the statute as to quantum of proof necessary that the will was wholly written in the handwriting of Sanders. Crockett v. Dorman, Tex.Civ.App., 296 S.W. 907; 44 Tex. Jur., p. 657, sec. 114.

The evidence being sufficient to uphold the trial court's finding that the instrument was written wholly in the handwriting of Sanders, we overrule the point of error.

■ Appellant contends that W. C. Adams was an incompetent witness under

Article 3716. During his lifetime, Sanders had stated to appellant and to Adams that he wanted Adams to have a certain set of hand tools. After Sanders' death, appellant voluntarily turned the hand tools over to Adams. The tools were not mentioned in the will. Adams was not named in the will and he had no interest in the estate of Sanders. He was not an heir of Sanders. No rights of Adams were affected whether the will was or was not admitted to probate. Where a person is not a necessary, proper or actual party to a suit and cannot be affected by the judgment of the court and is in no way interested in the outcome, he is not incompetent to testify under Article 3716. King v. King's Unknown Heirs, Tex.Com.App., 34 S.W.2d 804; Corbell v. Koog, Tex.Civ.App., 188 S.W.2d 905, error refused; McKibban v. Scott, 131 Tex. 182, 114 S.W.2d 213, 115 A.L.R. 1421.

The point of error is overruled.

The instrument offered for probate reads as follows:

"Dec. 19. 1949

"to whom cocerne

"In case I Pass away I would like for My Estate to be divided as follows—

"To Elma Maxwell My Part of the J. H. Sanders Estate. My Turunk and its contents, and one half (½) of my household furnishings

"This is in my own handwriting. I have not been influenced by any one

(Signed)   "Thomas C. Sanders

or

"T. C. Sanders"

Between the sentence ending "my household furnishings" and the sentence reading "This is in my own handwriting," there is a rather wide blank space.

Supporting the trial court's finding that Sanders intended the instrument to be his last will, in addition to the instrument itself, is evidence that appellee and Sanders were first cousins. She had loaned him money in the past which he had been unable to repay. He had made the statement that he hoped she would get something out of the Sanders estate. He owned an undivided interest in the Sanders estate as his separate property. He was suffering from cancer and apparently knew he did not have long to live. He tried to get a lawyer but the lawyer being unable to see him sent word that he, Sanders, could write a will himself. On the 19th of December, 1949, Sanders said in the presence of appellant's witness, George Coulter, "While Boogy (Coulter's nickname) * * * is here, I had better fix that business up" for "tomorrow might be too late." According to the witness Coulter, Sanders then wrote the instrument in his own handwriting. Something was said about the possibility of adding to or changing the instrument the next day; however, no changes were made, although Sanders lived until the 26th of December, and, according to his physician, was of sound mind up to the day of his death. After writing the instrument in question Sanders told Dr. Taylor that he had made his will. Two days before his death he told Adams he had made a will leaving his property to Elma Maxwell.

It cannot be disputed that Sanders wanted to make a will. The above evidence, in our opinion, together with the instrument itself, is sufficient to show that Sanders signed the instrument with the intention that it be his last will.

The appellant contends that the instrument showed on its face that it is not of testamentary character. In order to admit a writing to probate it must appear that the instrument is testamentary in character. Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001; Hammett v. Farrar, Tex.Com.App., 29 S.W.2d 949. The appellant argues that the words used by Sanders are merely precatory and not testamentary.

It was held in Drinkard v. Hughes, Tex. Civ.App., 32 S.W.2d 935, that whether the word "desire" is employed in its mandatory or precatory sense must be determined in each case by the context. The Commission of Appeals in Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402, in construing

the words "wish" and "desire," stated that these words in their ordinary and primary meaning are precatory, but they are often construed as mandatory when used in an instrument admittedly a will or when it appears from the context or from the entire document that they are the expression of the testator's intention in making disposition of his property. In Welch v. Rawls, Tex.Civ.App., 186 S.W.2d 103, 104, the testator had used the words, " 'In case of death, I want Will's property returned to him, also have control of what I claim and own. I want Clara, Loudell and Jack Jr. to share of proceeds from what I leave.' " The court in that case held that the word "want" as employed in the will was mandatory in meaning and not merely expressive of a precatory desire, citing Drinkard v. Hughes, supra, and Langehennig v. Hohmann, supra.

■ To hold the words "I would like for My Estate to be divided as follows" and "To Elma Maxwell My Part" to be precatory only would render the instrument meaningless. There are no other words of bequest used in the instrument. There are no other named beneficiaries. In view of the instrument as a whole, we are of the opinion the words as used in this particular instrument were employed as mandatory and not merely the expression of a wish or desire.

We believe the instrument, viewed as a whole, shows the words used were intended by the testator to devise his separate interest in the J. H. Sanders estate to appellee herein, and that it was of sufficient testamentary nature to be entitled to probate. The judgment of the trial court ordering the same probated will not be disturbed.

The trial court's finding that Sanders wrote said will of his own free accord without anyone influencing him is supported by the testimony of the witness George Coulter. According to the witness he and appellee were with Sanders when the instrument was written and appellant was present at least a part of the time. The witness was sitting by Sanders and appellee was across the room. At Sanders' request

appellee told him how to spell some words. There is no evidence that appellee said anything, except to spell some words as requested. Appellant did not testify.

■ The burden of proof was upon appellant to prove by a preponderance of the evidence that the will was the result of undue influence exercised by appellee. Undue influence cannot be inferred alone from motive or opportunity but there must be some testimony, either direct or circumstantial, to show that undue influence not only existed but that it was in fact exercised with respect to the making of the will itself. Maul v. Williams, Tex.Civ.App., 88 S.W.2d 1087; Idar v. Uehlinger, Tex.Civ.App., 49 S.W.2d 998, error refused.

At the most, we think the evidence showed an opportunity on the part of appellee to exert undue influence.

The evidence being sufficient to uphold the trial court's finding on undue influence, we overrule the point of error.

The judgment of the trial court is affirmed.