## BURGES v. GRAY.
### No. 11831.

Court of Civil Appeals of Texas.
San Antonio.

May 5, 1948.

Rehearing Denied June 9, 1948.

Leonard Brown, Archie S. Brown, W. Pat Camp and Perry S. Robertson, all of San Antonio, for appellant.

Carl Wright Johnson, Nat Hardy, Boyle, Wheeler, Gresham & Davis and Wm. N. Dillin, all of San Antonio, for appellee.

NORVELL, Justice.

This is an action of trespass to try title. The appellee, T. R. Gray, was the plaintiff below. He sought a recovery of title and possession of Lots 10 and 11, New City Block 416 of the City of San Antonio, from the defendant, A. W. Burges.

The petition was essentially in statutory form, except for a plea of limitation asserted by the plaintiff by way of trial amendment. By this amendment the plaintiff claimed that any right the defendant, Burges, may have had to rescind or reform a certain contract and deed of June 22 and 23, 1937, respectively, was barred by the two and four year statutes of limitations.

The defendant went to trial upon a plea of not guilty.

The judge below instructed the jury to return a verdict for the plaintiff and from a judgment based thereon the defendant has appealed.

The property involved was admittedly the separate property of Clara Gray Burges, now deceased. Both parties claim under her. The appellee, T. R. Gray, was her half brother and the defendant, A. W. Burges, was her husband. There were no other heirs at law. About eight years after the execution of the deed mentioned, Clara

Gray Burges died in the State of California, leaving a will in which her husband was named as sole beneficiary. This will was admitted to probate in the State of California.

Upon the trial a deed from A. W. Burges to T. R. Gray, dated June 23, 1937, was introduced in evidence. The granting clause of this deed read as follows:

"That I, A. W. Burges, of the County of Los Angeles, State of California, for and in consideration of the sum of ten dollars and other valuable considerations paid by T. R. Gray, the receipt of which is hereby acknowledged, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said T. R. Gray, of the County of Bexar, State of Texas, all of the real estate situated in the State of Texas, which Clara Gray Burges now owns or in which she has any interest, and all real estate in the State of Texas hereafter acquired by the said Clara Gray Burges or in which she may hereafter acquire any interest, and which real estate situated in the State of Texas would be inherited by me as an heir of the said Clara Gray Burges or may be devised to me by a will of the said Clara Gray Burges, and particularly lots 10 and 11, new city block 416, within the corporate limits of the City of San Antonio, Bexar County, Texas, said property being shown on the city assessor's block map of said city as lots A-17 and A-18 in said new city block 416, there being hereby granted, sold and conveyed unto the said T. R. Gray all the right, title and interest in and to all of said real estate situated in the State of Texas owned by the said Clara Gray Burges, or in which she has any interest, to which title would be vested in me at the death of the said Clara Gray Burges as an heir at law of the said Clara Gray Burges or as the devisee under a will of the said Clara Gray Burges, it being the purpose and intention of this conveyance to grant, sell and convey unto the said T. R. Gray and to vest in him my expectancy as an heir at law of the said Clara Gray Burges or a devisee under a will of the said Clara Gray Burges in and to all of said real estate situated in the State of Texas, and particularly the two lots above specifically described."

This deed also contained full covenants of warranty.

In Texas it seems well settled that the conveyance of an expectancy, of a prospective heir is valid and enforcible. Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, 36 L.R.A. 75, 59 Am.St.Rep. 819; Barre v. Daggett, 105 Tex. 572, 153 S.W. 120; Hammett v. Farrar, Tex.Com.App., 29 S. W.2d 949; Gottwald v. Warlick, Tex.Civ. App., 125 S.W.2d 1060. A conveyance of an interest which one may receive under a will is likewise enforcible. Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, 36 L.R.A. 75, 59 Am.St.Rep. 819; Jenkins v. Adcock, 5 Tex.Civ.App. 466, 27 S.W. 21.

The undisputed testimony shows that Clara Gray Burges is dead, and as A. W. Burges has conveyed his interest in the property involved to T. R. Gray, this would seem to end the matter as the conveyance can not be cancelled or set aside upon a not guilty plea. Packard v. De Miranda, Tex.Civ.App., 146 S.W. 211.

It is, however, earnestly contended by appellant that the interest, if any, which Gray acquired in the property here involved was at most a mere equity, and could not be asserted under the statutory allegations of a petition in a trespass to try title action.

It seems that originally sales and contracts relating to expectancies were enforcible only at equity. The leading case in Texas relating to expectancies is Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, 289, 36 L.R.A. 75, 59 Am.St.Rep., 819, opinion by Mr. Justice Denman. The precise point involved was whether or not a conveyance of an expectancy could be enforced in the absence of a showing of approval thereof by the ancestor, or the person from whom the expectancy was to be derived. Upon this point Justice Denman followed the English rule rather than the one stated by Chief Justice Parsons of the Massachusetts Supreme Court in Boynton v. Hubbard, 7 Mass. 112. The opinion discusses the nature of expectancies and the rules applicable to contracts with reference thereto. Such contracts are regarded by the courts with suspicion, "first from the fact that such expectants, being often young, inexperienced, hard pressed, or of extravagant

habits, are inclined to sacrifice their future interests to meet their present real or imaginary wants, thus rendering them easy victims of the schemes of that cunning and pernicious element who too often mark them as their prey; and, second, from the fact that such transactions are looked upon as a species of fraud upon the ancestor or person from whom the expectancy is to be received, in that they, being usually of a secret nature, tend to destroy or lessen his influence and control over the expectant by giving him independent means of gratifying his desires, and in that the ancestor would often be thereby deluded into virtually leaving his property not to the persons intended, but to the stranger who had so insidiously undermined his domestic authority, and encompassed the ruin of the intended beneficiary of his fortune."

When such contracts are brought into question the law raises a presumption against their validity. The burden devolves upon the one claiming under a contract of this nature "to make good the bargain," that is, to show that the dealing was fair, not inequitable and supported by an adequate consideration.

In Mastin v. Marlow, 65 N.C. 695 (quoted in Hale v. Hollon), the Court mentioned three possible decrees which might be entered in suits involving contracts relating to expectancies under varying circumstances, i.e., specific performance, return of money advanced to the heir, or refusal of all relief by reason of fraud and imposition. We do not understand these types of judgments to be exclusive. For instance, in this case it would be a bit incongruous to order Burges to execute another deed by way of specific performance, considering that he has heretofore executed a deed with the proper granting clause and full covenants of warranty. While an expectancy may be defeated by the ancestor it is, nevertheless, an interest which will support a homestead claim and a proper subject of sale and conveyance. Young v. Hollingsworth, Tex. Civ.App., 16 S.W.2d 844, wr.ref. We think the form of the instrument involved is important. If it be a deed, then the deed must be properly attacked.

In Hale v. Hollon, supra, Mr. Justice Denman said: "* * * and Lord Hard-wicke, after delivering a dictum, which has ever since been referred to as the most lucid exposition of the law relating to such contracts to be found in the books, proceeded to dispose of the case by holding *that the bond was not void at law, but, at most merely voidable in equity;* and therefore, since the expectant had ratified it after the death of the dutchess, no relief could be had." (Italics ours.)

In commenting upon Boynton v. Hubbard, 7 Mass. 112, Mr. Justice Denman points out that the holding of that case "is severely criticized by the editor in his notes to said report, wherein he maintains that, the proceeding being one at law, the contract was erroneously held void, as it 'was undoubtedly good at the common law, and voidable only in a court of equity.'"

In Gottwald v. Warlick, Tex.Civ.App., 125 S.W.2d 1060, 1061, this Court, in an opinion by the Chief Justice and following Hale v. Hollon, said: "A mere expectancy of inheritance, or remainder of a defeasible estate, may be assigned, and *a regular conveyance thereof is valid and will be upheld, unless fraudulently procured, which is not charged in this case.*" (Italics ours.)

Not only do the authorities indicate that a conveyance of an expectancy must be questioned by proper pleadings, but there are practical considerations supporting this view. Usually a trespass to try title action is a comparison of titles. A party may have in his chain of title a deed remote in time which conveys an expectancy. Proof of the circumstances surrounding the execution of the deed may not be available. The opposing party may likewise be without knowledge of such facts and may have no title at all, yet, if the rule contended for by appellant here be adopted, the party claiming under the deed in order to make the same admissible in evidence, would have to plead and prove absence of fraud or inequities and that an adequate consideration had been paid for such deed. We think the better view is to regard the deed of the expectancy as voidable only. The right to avoid the deed therefore would be an equity. The person seeking to avoid the deed would have to raise the issue by proper pleading

and connect himself with the equity, that is, show that he was holding under the ancestor or the person from whom the grantor in the questioned deed expected to derive an estate. Once issues are properly raised, evidence heard, etc., the rules relating to burden of proof as set out in Hale v. Hollon, supra, are applicable. We hold, however, that one holding under a deed of expectancy is not required to anticipate an attack upon his deed by reason of fraud, inequity or inadequacy of consideration, in the absence of a proper pleading raising the issue.

■ However, our disposition of this appeal need not rest alone upon our holding relating to the pleadings, as we are convinced that the evidence supports the trial judge's action in peremptorily instructing the jury to find for the appellee. There are certain questions relating to the statutes of limitations and the admissibility of testimony discussed in the briefs, which we find unnecessary to discuss here. The case went off on an instructed verdict and had the trial judge considered testimony excluded by him but before us in a bill of exception, the result would have been the same.

The following facts appear as undisputed:

The appellant, A. W. Burges, married Clara Gray in Las Vegas, Nevada, on or about March 13, 1937. At that time Clara Gray was between fifty and fifty-five years of age. The appellant was twenty-three, and had been employed by Clara Gray as a chauffeur. The appellee, a half brother of Clara Gray, became concerned about her mental condition and was fearful that her young husband would waste her estate. Sometime in May or June of 1937, A. W. Burges and his then wife, Clara Gray Burges, returned from California to San Antonio. Appellee on June 4, 1937, filed an application in the Probate Court of Bexar County asking that Mrs. Clara Gray Burges be declared a person of unsound mind and that he, T. R. Gray, be appointed guardian of her person and estate.

On June 22, 1937, the appellant, A. W. Burges, and appellee, T. R. Gray, entered into a written agreement which resulted in the execution of the deed heretofore referred to.

This agreement was apparently drawn with considerable care and skill. It contained a number of "whereas clauses" setting forth the agreed factual bases for the engagements of the parties.

The contract referred to the marriage of Burges and Clara Gray on March 13, 1937, and recited that T. R. Gray had been informed by doctors, nurses and friends of Mrs. Burges, and he believed that at the time of her marriage to Burges, and long prior thereto, she had been incompetent to transact her business affairs; that in May, 1937, two medical doctors had observed Mrs. Burges for a period of ten days and stated to T. R. Gray, A. W. Burges and J. Whit Neal (Burges' stepfather) that it was their opinion that Clara Gray Burges was and had been for many years an epileptic, and at best incompetent and unable to handle her business and would steadily get worse, and that lunacy proceedings had been filed to have Mrs. Burgess declared of unsound mind and have a guardian appointed of her person and estate.

The contract then provided that:

"Whereas, knowing that the said Clara Gray Burges is of unsound mind and incapable of handling her affairs, it is the desire of both the said A. W. Burges and T. R. Gray, insofar as it is within their power to do so, to see that the estate of said Clara Gray Burges is put in such shape and so as to provide that as long as she lives she shall have every care and comfort possible:

"Now, Therefore, the said A. W. Burges and T. R. Gray, both hereby agree that in order to effect such purpose and protect the estate of the said Clara Gray Burges, and to prevent long and costly litigation insofar as it is within their power, they will, subject to the approval of the County Court of Bexar County, Texas, arrange for the Frost National Bank, a corporation by and under the laws of the United States of America, having its domicile in San Antonio, Bexar County, Texas, to be appointed Guardian of the Estate of the said Clara Gray Burges, and for the said A.

W. Burges to be appointed Guardian of her person, the said T. R. Gray waiving any right as next of kin to be appointed guardian of her person and estate; * * *."

Gray also agreed that he would not oppose the payment of $600 per month for the support of said Clara Gray Burges, or a greater sum in the event $600 should prove insufficient. As to the disposition of the estate in the event of the death of Clara Gray Burges, the contract provided that Burges should have a home in Hollywood, California, "purchased by said Clara Gray Burges" together with all furniture and fixtures of every kind and character, and $15,000.00 in cash. Burges agreed that the balance of the estate should go to Gray and agreed to execute proper instruments in connection with the transfer of title.

This contract and the deed heretofore described, which was designed to carry the contract into effect, were executed in the office of M. W. Terrell, a practicing attorney, who was a former husband of Clara Gray Burges. Terrell was not representing T. R. Gray but, seemingly, endeavored to effect a settlement between the parties and secure his former wife's subsistence and living expenses. From the standpoint of the disposition of this appeal, Terrell's position is largely immaterial. Had he been Gray's lawyer the result would not be affected.

At the time these instruments were signed by Burges the following were present: W. Boyd Smith, an attorney and notary public, who took the acknowledgments of the contracting parties, A. W. Burges, his brother N. W. Burges, and his stepfather, J. Whit Neal, as well as M. W. Terrell. The Burges brothers and Neal read over the contracts, etc., and then A. W. Burges signed and acknowledged them.

There was certain evidence excluded by the trial court upon the theory that appellant could not attack the instruments involved as being fraudulent because of the statute of limitations. Whether the trial court was right or wrong in his ruling is immaterial, as the excluded evidence shown in the bill of exceptions does not suggest fraud.

A. W. Burges testified for the purpose of the bill, as follows:

"Q. Well, Mr. Burges, in regard to the acknowledgment of this instrument, state what happened. A. Well, my brother and I walked into Mr. Terrell's office, and we were all in Mr. Terrell's office and Mr. Terrell had these papers and everything that were all drawn up. He had three copies of them made there and he gave one to my step-father and one to my brother and to myself and asked us to read them over. We did. And after we had read them over Mr. Terrell asked me what I thought about it. I told him at the time that I did not quite understand this meaning of this ncm that they had on the top there. And I asked him the meaning of it and he explained to me that ncm could mean any different number of things, and that it did not necessarily mean a person is insane, that they could only be incapable of handling their personal affairs, 'Which in this case you know as well as I do that Mrs. Burges is unable to do.' Well, I naturally agreed to that. Then Mr. Smith—

"Q. Before Mr. Smith came in, did Mr. Terrell or anyone else purport to tell you what the general effect of this thing was and what would be accomplished by it? A. Yes, Mr. Terrell went into great length to explain to me that in me signing these papers that Mrs. Burges would be taken care of for the balance of her life and she would have nothing to worry about, that all of her business affairs would be handled properly, and she would be given a set amount by the guardian of her estate for her upkeep and doctor bills and everything like that. Well, that sounded fine to me because I was interested in her welfare."

N. W. Burges' testimony was similar.

On May 9, 1945, after his wife's death, Burges sent T. R. Gray a written "Notice of Rescission," in which he set forth the contention that he had executed the contract and deed by reason of mistake, "duress, menace, fraud and undue influence exercised by and with (Gray's) connivance."

The testimony set forth in the bill of exception wholly fails to support the charge

contained in this notice, and the evidence as a whole affirmatively shows that no fraud was practiced upon Burges.

The most convincing evidence of fair dealing consists of the uncontradicted and unimpeached recitations contained in the contract of June 22, 1937. Upon that date Burges was fully competent to contract and was laboring under no disability. By the contract which he signed he said that his wife was of unsound mind and incapable of handling her affairs; that he wanted to see that she was provided for as long as she lived, and that he desired to prevent long and costly litigation. For these reasons he said that he entered into the engagements set forth in the contract. Under the facts of this case, we are of the opinion that the contract and deed involved should be enforced.

None of appellant's points disclose a reversible error and the judgment of the District Court is affirmed.