**TERRITO et al. v. HARKEY et al.**

No. 3019.

Court of Civil Appeals of Texas.
Waco.

May 1, 1952.

Rehearing Denied June 5, 1952.

252

J. C. Jacobs, Corsicana, for appellants.

Joe Simkins, Corsicana, John V. Dowdy, Sam H. Holland, Athens, for appellees.

TIREY, Justice.

C. E. Harkey and R. E. Frazier brought this suit against Louis Joe Territo and W. C. Warren for rescission of a contract of purchase of one Massey-Harris combine. In the alternative they ask for damages resulting from the breach of the contract of sale. The action was grounded on fraudulent representations. They also joined in the suit the First State Bank of Eustace, alleging that the bank had acquired a mortgage on the property securing a note given for a part of the purchase money. Plaintiffs specifically alleged the special damages they had sustained by reason of the fraud perpetrated on them and also asked for exemplary damages by virtue of such fraud. They prayed for rescission of sale cancelling their note and asked for their damages, itemizing same. In the alternative they prayed for a judgment that would in effect adjust the equities of all the parties. The bank filed its answer and cross action and set out the facts and circumstances under which it made the loan and took a mortgage on the combine to secure its note, all of which was done under the representation contained in the invoice to the effect that the combine was a new one, to enable the plaintiffs to complete the purchase and sale of the combine in suit. The bank prayed for its debt, interest and attorney's fees and foreclosure of its mortgage lien and for equitable relief.

At the conclusion of the testimony Territo and Warren moved for an instructed verdict, which was overruled. The jury in its verdict found substantially that Territo and Warren, in making the sale of the combine, represented to plaintiffs that said combine was new; that such representation was false; that it was knowingly made for the fraudulent purpose of inducing plaintiff to purchase the combine and that Territo and Warren, in making such representation, acted maliciously; that plaintiffs believed the representations made to be true and that plaintiffs relied on same, and that plaintiffs would not have purchased such combine except for such representation that it was new; that the reasonable cash market value of the combine in Houston, when delivered to plaintiffs, was $3,000, and fixed the sum of $1,000 as exemplary damages against Territo and Warren; that Territo and Warren did not represent to the plaintiffs that such combine had been used six hours and converted from tracks to wheels; that Frazier did not, on July 28, 1949, agree to accept the combine if the same were painted and the bent parts replaced; that plaintiff Harkey did not constitute Clifford Pelham his agent with authority to accept the combine at Houston and waive defects, if any, therein; that plaintiffs notified Territo and Warren that they were rescinding the contract within a reasonable time after receiving the combine at Panhandle. Plaintiffs seasonably filed motion for judgment, which was granted, and the court decreed that the contract for the purchase and sale of the combine be rescinded, and fixed title and ownership to the combine in Territo and Warren subject to foreclosure granted the First State Bank of Eustace, and awarded recovery in favor of Harkey and Frazier against Territo and Warren in the sum of $5,598 and specified that such sum was made up of the following items: $4,050, being the sum paid by plaintiffs; $492.50, being the interest to date of judgment; and $55, transportation expense, and $1,000 as exemplary damages, and awarded legal interest from the date of judgment. The decree further provided that the First State Bank of Eustace recover of Harkey and Frazier the sum of $2,942.75, which was made up of the following items: $2,675.25, principal on the note; $267.50, attorney's fees, together with legal interest on the sum from the date of judgment until paid. It foreclosed the mortgage lien of the First State Bank of Eustace against the combine and provided for order of sale and decreed

that the proceeds of the sale be paid the First State Bank of Eustace to be applied as a credit on the bank's judgment against Harkey and Frazier, and that the same amount be credited on the judgment rendered in favor of Harkey and Frazier against Territo and Warren. The decree further provided that Territo and Warren may pay to the First State Bank of Eustace the amount of the judgment decreed in its favor against Harkey and Frazier and in the event of such payment the amount so paid shall operate pro tanto as a discharge of the judgment in favor of Harkey and Frazier against Territo and Warren. The costs of suit in behalf of the First State Bank were taxed against Harkey and Frazier and all other costs incurred were taxed against Territo and Warren and they seasonably filed motion for new trial, which was overruled, and appeal has been perfected to this court. (The sufficiency of the evidence to sustain the verdict of the jury and the judgment of the court is not assailed.)

Our view is that the controlling facts in this case are without dispute, save and except that Territo and Warren claimed that they advised plaintiffs to the effect that this machine had been used in the rice fields for a period of some six hours but notwithstanding this fact it was a new machine, and Harkey and Frazier agreed to accept it after making some repairs and having it painted, and further that Max Christianson, the previous owner of the machine, testified to the effect that one of appellants had come to Houston and examined the combine before the day that defendants and the truck driver came down to get it. It is without dispute that the bank had no knowledge that the combine had been used, but on the contrary their sole information was to the effect that the combine was a new machine. In the latter part of June, 1949, the plaintiffs went to the place of business of the defendants in Corsicana, Texas, for the purpose of purchasing a new combine. At the time plaintiffs were farmers in Henderson County, but were operating a combine in the area of Panhandle, Texas, and desired to purchase another combine to use immediately in the harvest of 1949. Defendants did not have a combine in stock (combines were scarce) but they located one through a dealer in Houston and immediately advised plaintiffs about this machine. Plaintiffs had only $1,400 in cash to apply on the purchase price and told defendants they would have to finance the remainder of the purchase price. Defendants were unwilling to do this and requested plaintiffs to finance the balance of the purchase price through their local bank. After some negotiations the parties agreed to the purchase and sale of the combine at a price of $4,075.25 and the defendants prepared and delivered to plaintiffs an invoice "for a new 26A Massey-Harris Combine" with specifications as to other equipment and placed this invoice in plaintiffs' hands for the purpose of using such invoice to borrow the balance of the purchase price from the bank at Eustace. (Defendant Warren testified to the effect that he sold the combine as a new machine and at the price of a new machine). Plaintiffs thereafter submitted this invoice to the bank and obtained a loan of $2,675.25 and executed a note for such amount secured by chattel mortgage on the combine described in the invoice. After plaintiffs obtained their loan plaintiff Harkey issued his check, drawn on the Eustace bank, for the sum of $4,075.25, payable to defendants and sent it to defendants on the morning of June 29th by Clifford Pelham, a truck driver. Defendants accepted the check and called the bank at Eustace to see whether or not it was good and were advised that it was and they deposited it to their credit in a bank at Corsicana. Thereafter defendant Warren went in his car to Houston for the purpose of completing the transaction with the Houston company who had title to the property and he was followed by the truck driver who was to transport the combine from the Houston area to Panhandle. Warren testified to the effect that when he and the truck driver reached the machine they inspected it and Warren said: "Well we both noticed it had faded out and showed that it had been in the field, etc., as has been previously outlined, and I asked him if he thought we should call Mr.

Harkey, and what he thought about it. * * * A. He said, 'load it up'. Q. Did he say whether or not it was all right? A. Well, I wouldn't go so far as to say it was all right, but he said 'load it up' and I assumed that." Thereafter, the machine was loaded on the truck and Warren paid the sum of $3,300 to the owner of the combine at Houston, and the trucker proceeded to Panhandle, in North Texas, reaching there on the night of July 1st and on July 2nd the plaintiffs saw the combine for the first time. When plaintiffs saw the combine they were not satisfied with it and immediately called the defendants over long distance telephone and advised them to the effect that they were not satisfied with the machine and that the machine was not new but was secondhand and refused to accept it and demanded a new machine or their money back. Defendants insisted that the machine was not secondhand but was a new machine and neither would yield to the other's contentions. Plaintiff Harkey made a trip back to Henderson County, consulted with his attorney, and advised the bank of the condition of the machine and that they had refused to accept it. A few days later he came to defendants' place of business in Corsicana and discussed with them the condition of the machine and demanded a new machine and advised them that the machine was theirs and that plaintiffs would not accept it. Plaintiffs never used the machine but brought it back and delivered it to defendants' place of business and there it has remained. At the time plaintiffs demanded a rescission of the contract the note they had executed and delivered to the bank had not matured and the bank had not placed such note in the hands of an attorney for collection. After the bank had notice that the combine was secondhand it demanded that its money be repaid because it had made the loan on the basis that the combine was new and that it could not carry this loan on a secondhand machine. Owing to the fact that defendants refused to rescind the contract and refund plaintiffs' money, plaintiffs seasonably filed suit and interpleaded the bank and the trial resulted as above stated.

■ Appellants' fourth point is to the effect that the trial court erred in its failure to submit to the jury an issue as to the apparent authority of Clifford Pelham to inspect and accept the combine for plaintiffs. We have carefully considered the testimony adduced and it is our view that the evidence does not tender an issue of apparent nor implied authority of Clifford Pelham to inspect and accept the combine for plaintiff, but on the contrary such testimony tenders only the issue of the express authority of Pelham to inspect and accept the combine. This issue was fairly submitted by the court to the jury and was answered adversely to appellants. It follows that appellants' fourth point is overruled, as well as their fifth point which complains of the failure of the court to give their special issues Nos. 2 and 3 on the question of implied or apparent authority.

Appellants' sixth and seventh points are to the effect that the court erred in rescinding the contract because plaintiffs had not placed defendants in a position of status quo, because when the combine was tendered back it had a valid chattel mortgage lien against it. Point eight assails the judgment because the court rendered judgment in favor of plaintiffs in the total sum of $5,598, and point nine says that the court, by its judgment, attempted to place defendants in status quo, ordering defendants to pay off the lien holder. Point ten is that since the evidence showed that plaintiffs had not placed defendants in a position of status quo, the trial court was without authority to enter judgment for rescission and that the only judgment that could have been rendered would have been one for damages as fixed by the jury. We overrule each of these contentions.

The jury's verdict is to the effect that defendants caused the debt and mortgage to be placed on the combine and that they received the benefit thereof; that the statements contained in the invoice that the machine was a new one caused the bank to advance cash evidenced by the note and mortgage and that but for such representation the bank would not have advanced that sum as a part of the purchase price; that after plaintiffs saw the machine they

were unwilling to accept it as a new combine and refused to use it and demanded a new machine or a return of their money, and at that time the note to the bank was not due, nor had the attorney's fees been matured, and defendants had an opportunity to make a rescission by accepting the combine and refunding the money that they had obtained by means of the false representations that plaintiffs alleged they had made; that the sale was made on June 29th and that plaintiffs saw the combine for the first time on July 2nd and that they seasonably notified defendants they would not accept the machine and demanded a new machine or their money back.

■■■ We have considered the judgment very carefully and it is our view that it follows the verdict of the jury and adjusts the rights and equities of all the parties and in effect only requires Territo and Warren to do what they should have done when the plaintiffs advised them that they would not accept the combine and tendered it back to them. We think the judgment of the trial court is in accord with the rule announced in Way v. Siddall, Tex.Civ.App., 299 S.W. 313, writ ref., and Auburn Dallas Co. v. Stewart, Tex.Civ. App., 46 S.W.2d 336, writ ref., and authorities there collated. These refusals were subsequent to June 14, 1927, which makes these cases of equal dignity to the opinions of our Supreme Court. See Texas Bar Journal, Dec.1949, Vol. 12, p. 547, article by former Associate Justice Simpson. Our Supreme Court has not seen fit to change the rule there stated and needless to say we·are bound thereby. In 9 C.J. 1210, sec. 96, we find this statement of the rule: "The rule that a court of equity will not decree a rescission of a contract unless plaintiff is able to place the defendant in statu quo will not be enforced where, by the fraud or other wrongful act of defendant, plaintiff has been rendered totally unable so to do. As was said in the leading case on the subject, 'if * * * he has so entangled himself in the meshes of his own knavish plot, that the party defrauded cannot unloose him, the fraud is his own; and the law only requires the injured party to restore what

he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him.'" See, also, 12 C.J.S., Cancellation of Instruments, § 44. Such rule is substantially the rule applied by our courts in the above cited cases and is in accord with the rule announced by Black on Cancellation and Rescission, Vol. 2, secs. 623 et seq. See Simkins on Equity, 2d Ed., p. 729; also Dawson v. Sparks, 1 Posey Unrep.Cas. 735; 7 Tex.Jur. 964, sec. 49; Donoho v. Hunter, Tex.Com.App. judg. adopted, 276 S.W. 174; also Brown v. Norman, 65 Miss. 369, 4 So. 293.

It is clear to us that since the defendants prepared the invoice and delivered it to plaintiffs with the intent and purpose that they could use it in inducing the bank to make the loan to plaintiffs, that the trial court had the right, under the verdict of the jury, to enter the decree that it did, so as·to settle and adjust all the equities and rights of all the parties. We think the decree did just that. See 20 Tex.Jur. 103, sec. 67; American Indemnity Co. v. Ernst, & Ernst, Tex.Civ.App., 106 S.W.2d 763; Burnett v. Boyer, Tex.Civ.App., 285 S.W. 670.

Appellees Harkey and Frazier have cross-assigned error to the decree because "under the pleading and proof, plaintiffs should have had judgment for the amount of their own funds paid to defendants, viz. $1400.00, interest, consequential damages and exemplary damages, together with recovery over against defendants for the amount recovered by defendant-bank against plaintiffs." We think this cross-assignment would be good but for the fact that the effect of the decree entered by the court accomplishes this result.

■■■ Appellees' second cross-point assigns error to the decree in taxing that portion of the costs incurred by the First State Bank of Eustace against them. We sustain this contention. Since, under the undisputed evidence and findings of the jury, the plaintiffs offered to deliver the machine back and rescind the contract and

256

accept the money paid by them before any costs were incurred in suit by them or by the bank (the bank was willing for an adjustment to be made), and since, under the pleadings and the evidence adduced and the verdict of the jury, the plaintiffs' fraud resulted in the bank being involved in this transaction, it seems fair and equitable to us that the appellants should have been taxed with the costs incurred by virtue of the bank being a necessary party to the suit. Needless to say, without the bank having been made a party to the suit, appellees' rights could not have been fully determined and protected. See Rule 448, Texas Rules of Civil Procedure. We think under the record here good cause exists why such costs should be taxed against appellants. See Lone Star Gas Co. v. Childress, Tex.Civ.App., 187 S.W.2d 936. Therefore, to this extent the judgment of the trial court must be reformed.

We have considered appellants' remaining points, namely, one, two and three, and it is our view that none present reversible error and each is overruled.

It follows from what we have said that all costs incurred in the court below and on appeal are taxed against appellants and to that extent the judgment of the trial court is hereby reformed and in all other respects is affirmed.

Reformed in part; affirmed in part.

LESTER, C. J., took no part in the consideration and disposition of this case.