**W. M. PEYTON, Jr., Appellant,**

v.

**Norman F. PEYTON, Appellee.**

No. 14847.

Court of Civil Appeals of Texas.

Dallas.

July 16, 1954.

Rehearing Denied Oct. 8, 1954.

Brundidge, Fountain, Elliott & Bateman, Dallas, for appellant.

Johnson & Rembert, Dallas, for appellee.

YOUNG, Justice.

This appeal is from an order of receivership, the main suit involving the estate of W. M. Peyton, Sr., who died, testate, in 1945; concerning which properties Norman Francis Peyton, plaintiff, and Wm. Marcus Peyton, Jr., defendant, are rival claimants. Estimated value of the subject matter herein is $3,000,000, having an income in early 1953 of $15,000 per month. Emory H. Wylie was appointed as such receiver after a prolonged hearing, upon approval of $50,000 bond, with ample powers relative to administration of the assets in controversy until further orders of court; defendant W. M. Peyton, Jr., being in the same order enjoined from any connection with the properties pendente lite. Facts leading up to the instant litigation are out of the ordinary, and, though extensive in scope, must first be stated; plaintiff hereinafter being sometimes referred to as Norman and defendant as Marcus.

W. M. Peyton, Sr., was killed in an automobile accident on March 14, 1945; at the

time a resident of Mexia, Limestone County, Texas. In January 1931 he had married a Miss Louise Clemments of New Orleans. She brought into the family a child, Norman Gonzales, who had been cared for and raised by her practically since his birth; the Peytons legally adopting Norman, then a boy aged 16, at Mexia in 1942. Earlier and in April 1932, at Baylor Hospital, Dallas, Mrs. Louise Peyton ostensibly gave birth to a boy baby (now William Marcus Peyton, Jr.), representing him to her husband as a child born of their marriage; Mr. Peyton until his death continuing to regard Marcus as a natural son and having no cause reflected by the record to believe otherwise. In September 1944 the Peytons obtained a judgment of divorce in the District Court of Limestone County, the decree reciting that Marcus "was born of said marriage relationship", adjudging custody of the child to W. M. Peyton for nine months of the year for purpose of its education, to Mrs. Peyton for the summer months; and awarding her in property settlement the sum of $7,500 per year, income tax free, out of the husband's property, recited as separate.

The last will of W. M. Peyton, Sr., duly probated in the County Court of Limestone County, Texas in 1945, gave to the adopted son Norman the sum of $1,000 when 21 years of age (now paid) and provided that same "shall be all that he shall receive from my estate." Peyton's property of every kind, real, personal or mixed, was then left in trust to W. W. Mason and H. L. Kidd of Mexia and H. W. Register of Corsicana, as the testator's Trustees and Executors without bond, for them to absolutely handle and control until Marcus attained the age of 25 years, when the estate should be turned over to said beneficiary in fee simple. Other parts of such will provided for the succession of Trustees, for regular sums to be paid "my said son" Marcus for his comfort, maintenance, support and education, even to exhaustion of the corpus if necessary; that should Marcus die before arriving at 25 years of age, the estate would go to his children, if married; if not, then to George and Patricia Peyton, son and daughter of Bailey Peyton. In 1952, Marcus, 20 years of age and married, secured removal of disabilities as a minor by order of the District Court of Limestone County; and becoming dissatisfied with the trust provisions of said will and management of the estate by the named Trustees (Wallace Welch, a successor), on or about February 17, 1953 mailed to these Trustees a letter stating in part: " * * * Having had my disabilities removed, and joined by my wife, Bonnie Bonner Peyton, I do hereby advise you that I hereby renounce, reject, refuse, and disclaim any and all rights, benefits, or interests that may have been, or have been, or were intended to be provided for me by the trust set forth in the will of my said father, William Marcus Peyton, deceased, wherein you were named trustees and executors. My purpose in so doing is to prevent the vesting of any rights, benefits, or beneficial interests in myself under such trust, or if any such rights, benefits, or beneficial interests therein shall have vested in me by virtue of the fact that I was a minor and thereby subject to disabilities as such, to disclaim the same and cause such testamentary trust to fail, and to divest myself of any such rights, benefits, or beneficial interests. My further purpose is, by virtue of the failure of such trust, to cause those properties which were devised or bequeathed to you as trustees under and by virtue of the will of my said father, William Marcus Peyton, deceased, to revert or return to you as executors of my father's estate only, and thereupon to descend or pass by law to me as his sole heir and next of kin." At the same time demand was made of the trustees for immediate delivery to Marcus of all properties "coming to you from the estate of my said father, William Marcus Peyton, deceased * * * pursuant to the laws of the State of Texas."

Prior thereto, by a writing drawn by the then attorneys for Marcus (Messrs. McCord, Durant and Witts), dated January 25, 1953, consideration $500 paid, Norman Peyton, appellee, then living at Las Vegas, Nevada, assigned, sold, and conveyed to Marcus all right, title and interest in and to the trust estate left by W. M. Peyton, Sr., which he might have, or become en-

titled to; a preliminary recital of the instrument being: "Fully conscious of the fact that I have no further interest in or to any of the properties left by my adoptive father, William Marcus Peyton, deceased, if the trust aforesaid exists or continues to its full term, being now advised by my adoptive brother, William Marcus Peyton, Jr., that he intends to disclaim, reject, and renounce any or all rights, benefits, or beneficial interests to which he may be entitled under such trust set forth in the will of my adoptive father, William Marcus Peyton, deceased, but that he will not do so except for first having obtained this release and surrender from me, realizing furthermore that as a result thereof I might claim an interest in any properties thereby reverting to the estate of my said adoptive father, William Marcus Peyton, deceased, or the Executors thereof, as intestate property under the laws of descent and distribution of the State of Texas, and intending by this instrument to forego and surrender any and all such rights which I might thereby have or acquire, * * *."

Subsequent to date of above instrument, and intervening February 17, 1953, there is testimony to the effect that Mrs. Louise Peyton, having learned of the steps taken to dissolve the Trust created by Peyton's will, made the following disclosure, first to the wife of Marcus and then to him: That at time of her marriage to W. M. Peyton, Sr., she was incapable of bearing a child; that she was not the mother, nor was Peyton the father of the infant born at Baylor Hospital on April 21, 1932; it having been born to another "Mrs. Peyton" on the same date, turned over to Mrs. Louise Peyton and presented, as his son,

to W. M. Peyton, who accepted the boy as such; with no information thereafter to the contrary. [1] The named attorneys for Marcus, when apprised of above turn of events, advised him that another assignment was necessary for signature by Norman, providing for a consideration adequate to the radically changed conditions. A second assignment of interest was then signed by Norman, dated February 13, 1953, consideration $100,000, payable in equal annual installments over five years, conditioned that payment for each year should not exceed 20% of the total amount of oil, gas or other minerals produced or earned from the properties received by Marcus; reciting that Marcus intended to rely on such assignment in event he should renounce the terms of the Peyton Trust; "and that but for the execution of such instrument, he, the said William Marcus Peyton, Jr., would not elect to reject the provisions of such trust * * *"; providing further that "Whereas, by common gossip which has come to the attention of both William Marcus Peyton, Jr., and Norman Francis Peyton, some doubt has arisen with respect to whether or not William Marcus Peyton, Jr., is in truth and in fact the true son and heir of William Marcus Peyton, Sr., deceased; and (IX) Whereas, being so advised, or if such is the fact, notwithstanding, the parties hereto intend hereby to confirm such sale, assignment, transfer and conveyance from Norman Francis Peyton to William Marcus Peyton, Jr., and intend hereby to further and implement the same * * *."

Appellant then brought suit in the 101st District Court of Dallas County for possession of the estate, naming the Trustees and other parties as defendants (not including

1. According to Mrs. Louise Peyton, a witness, prior to the marriage in 1931, she had undergone an operation in which both ovaries and tubes had been removed, rendering her incapable of bearing children. She wanted to adopt a baby but Mr. Peyton's mother was opposed to it and Peyton said he did not believe in adoption. However, she let it be known that she wanted a baby and some doctors agreed to cooperate. Arrangements were made for her to enter Baylor Hospital at the same time that another women, entered as Alma G. Peyton, gave birth to Marcus. Four days later she presented Marcus to her husband as a child born to them. Mrs. Peyton had gained noticeably in weight following her marriage, so that townspeople in Mexia, purporting to know about such things, had long predicted this event, and it was apparently not surprising to anyone, including her husband.

Norman). An agreed judgment resulted, March 25, 1953, reciting, among other things, that Norman had conveyed all his rights to Marcus; that Marcus had renounced his rights under the Trust and had elected to claim the estate as the sole heir and next of kin of Peyton, Sr.; declaring that such testamentary trust had failed and terminated, and ordering the Trustees to deliver its properties to Marcus on conditions recited in such decree, which they did.

The instant suit of Norman, filed January 29, 1954, was for cancellation and rescission of the assignments to Marcus made in January and February, 1953, alleging fraud in procurement thereof in that Marcus had not made full disclosure relative to his paternity at time of their execution; testifying to ignorance of the true facts until long afterwards; that he, Norman, had become the sole heir at law of W. M. Peyton, deceased, and equitable successor to his estate upon renunciation by Marcus and termination of the testamentary trust perforce of final judgment of the 101st District Court; further alleging lack of adequate consideration, insufficiency of consideration, etc.; in trial amendment pleading an alternative ground for receivership which will be later noticed. He charged a dissipation of the properties by Marcus and a right to appointment of a Receiver under subds. 1 and 4, Art. 2293, V.A.C.S., reading: "1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * * 4. In all other cases where re-

ceivers have heretofore been appointed by the usages of the court of equity."

Defendant in motion to dismiss plaintiff's petition for want of equitable right to recover the properties (overruled by the trial court) held in part: That "If for any reason, plaintiff is entitled to set aside his said assignment and agreement aforesaid, the defendant is in equity entitled to be restored to status quo and to have his renunciation or relinquishment set aside and the testamentary trust of the said W. M. Peyton, Sr., reinvested with title to said properties, and a trustee appointed to administer said trust." [2]

Similarly, in point 1, defendant asserts that on no theory could plaintiff have a "probable" interest in the properties, sufficient to warrant a receivership, "Since the agreements sought to be set aside specifically recite that Marcus would not renounce his rights under the trust except for Norman's agreements, equity would not permit a rescission of Norman's agreements without requiring as a condition thereof that Marcus be permitted to revoke his renunciation so as to put the parties in the same position they were before the execution of the agreements." The proposition just quoted centers upon the fact that plaintiff nowhere in his pleading or testimony offers to place defendant in status quo by permitting him to withdraw his renouncement of the trust upon which these assignments were based. Defendant invokes the ancient and familiar rule that he who seeks equity must do equity; more concretely stated in 7 T.J., sec. 46, pp. 958–960: "As a condition precedent to the granting of relief by way of cancellation, it must appear, as a general rule, that the situation of the parties is such that they may be placed in statu quo or restored to their former position; and, if relief is granted, the original status must

---

2. The trial court refused permission for Marcus to make affirmative answer to the following fact question raised in above defensive pleading: "Q. Now, I want to ask you this question, in closing. Are you willing if the Court should feel that you have mishandled the deal with Norman or mistreated Norman in any way in the obtaining of this contract, are you willing for the whole deal to be called off with Norman and both parties put back where they were before * * *?"

be restored. The equitable rights of the defendant should be protected. The plaintiff is required to acknowledge such rights and provide for their security by doing or offering to do whatever is necessary to that end. He must return or offer to return to the defendant whatever he may have received, or its value within a reasonable time after the discovery of his rights; he cannot be permitted to repudiate the instrument, and, at the same time, retain the benefits received thereunder. Where the complainant has not restored or offered to restore the consideration, he does not reacquire any equitable title or put himself in a position to ask a rescission. This results from the equitable maxim that 'He who seeks equity must do equity.' * * *." Here it must be observed that the status quo implicit in suits for cancellation of instruments is referable to the original situation of the parties; in this case, their situation prior to the 101st District Court proceedings of February 1953 terminating the trust provision of the 1944 will at instance of Marcus. Assuming a restoration of such former status, the cause of action accruing to Norman, on discovery of the true facts concerning the parentage of Marcus, was obviously one to set aside the will, maintainable in the Probate Court of Limestone County; Art. 5536, V.A.C.S., providing therefor within four years after discovery of any "fraud" practiced upon the testator. Such right of action still exists; Norman, seeking the same objective in this petition for cancellation of the instruments executed by him; arguing that, under the existing facts and circumstances, he is to be excused from a compliance with the equitable rule that a rescinding party cannot be permitted to repudiate his contract and, at the same time, retain the benefits received thereunder. His contentions, thus generally stated, will be briefly outlined.

Appellee says (1) that prior to these assignments of interest he had a cause of action to set aside the will of W. M. Peyton, Sr., which cause of action is now only partial in that a portion of the will (the trust to Marcus) has already been set aside by a judgment of the 101st District Court. (2) Still denominating the 101st District Court recital "that said trust has failed and terminated," as a partial *setting aside* of the Peyton will, appellee says that same is a "judgment in rem," binding upon all persons and res adjudicata (26 T.J., sec. 451, p. 209), thereby precluding a restoration of the status quo; whereas, recital of the 101st District Court judgment decreeing that Norman had assigned his interest in the estate, is one in personam and not binding on him, who was not a party to that suit. (3) Restoration of the status quo is impossible in that (a) the properties could only revert to trustees who have resigned or been removed; and (b) Marcus, by his own wrongful acts, has so dissipated and encumbered the estate that same cannot be restored to its former condition. (4) That defendant does not himself seek a return of the status quo, but rather the establishment of a new trust with a corporation as trustee, which legal entity could not better serve the interests of all parties pendente lite than could the Court's own receiver.

We will now discuss the contentions of appellee just detailed; claiming inapplicability of the general rule of equity as stated in 7 T.J., pp. 958–960, that the sine qua non in a suit for rescission is an offer of restoration of benefits. He says that the recitals in the 101st District Court judgment bar all parties from a return to their original status; characterizing same as a "judgment in rem," setting aside a portion of the W. M. Peyton will. In the first place, aforesaid Dallas County judgment does not purport to set aside this 1944 testament or any part of it, and would be wholly without legal effect if it did; the County Court of Limestone County being the only forum with jurisdiction to so act; Minor v. Hall, Tex.Civ.App., 225 S.W. 784; Messer v. Carnes, Tex. Civ.App., 71 S.W.2d 580; which action, if taken, would become the "judgment in rem" referred to in appellee's authority

of 26 T.J., sec. 451, p. 209. On the other hand, the recitals of said 101st District Court judgment decree that Norman had assigned all his interest to Marcus and that the latter had renounced his rights under the trust, are but parts of a judgment in personam; mutually binding on both, or wholly without any effect on the rights of either party to this litigation. "It is a familiar rule that an estoppel must be mutual in order to be operative, and this rule applies with full force to the doctrine of res judicata. The judgment must conclude both litigants alike, or it will conclude neither. It follows that, as a general rule, one who is not bound by a judgment—such as a stranger thereto—may not invoke its benefits, and a party is not estopped to deny its recitals as against him. * * *." 26 T.J., sec. 452, pp. 211, 212.

Moreover, under the principle that one claiming the benefit of an instrument must take it with its burdens, Norman cannot assert that the recital of renunciation of trust irrevocably binds Marcus thereto, without at the same time being bound by the recitals that he has irrevocably assigned all of his interests to Marcus. And as pointed out by appellant (assuming a repudiation of the assignments by Norman), it would clearly appear that the 101st District Court judgment has little bearing, if any, upon the rights of the parties to this controversy; the situation simply reverting to what it would have been had the trustees, on demand of Marcus, voluntarily turned over the estate to him.[3]

Second, appellee's counter-points arguing impossibility of equitable restoration relate to a rescinding party's *own inability* to place the defendant in status quo by reason of the latter's wrongful acts; as illustrated in the cited case of Territo v. Harkey, Tex.Civ.App., 249 S.W.2d 251, 255, and hence not controlling here. But it is consistently held that a rescinding party is not thereby excused from *offering* to do full equity; the court in Territo v. Harkey, supra, quoting with approval the following excerpt from 9 C.J., p. 1210: "'* * * the law only requires the injured party to restore what he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him.'" See also, 12 C.J.S., Cancellation of Instruments, § 44. Nor is it any concern to plaintiff that defendant on his part has substantially mishandled the trust. The fact that Marcus may be later brought to a strict accounting of his stewardship is an evident non sequitur as regards the duty of Norman in presently seeking a receiver; i. e., that he offer to permit the court to make such orders and take such action as equity may require to restore the original position of the parties. And the further fact that Marcus, upon repudiation of the assignments of Norman, prays for appointment of a successor trustee in lieu of the original trustees set up under the will, in no sense satisfies the requirement of probable interest necessary under Art. 2293, V.A.C.S., for relief thereunder; defendant having

3. Appellee does not deny that a court of equity generally has inherent power to permit a revocation of a renouncement where equitable grounds exist which would move the conscience of the court to do so. That principle has universally been applied to elections to take or refuse to take under a will. 69 C.J. 1128, sec. 2415; In re McFarlin, 9 Del.Ch. 430, 75 A. 281; In re Donovan's Estate, 409 Ill. 195, 98 N.E.2d 757; 69 C.J. 973; Bumpass v. Johnson, Tex.Com.App., 285 S.W. 272, 275; Annotations 81 A.L.R. 740. In the Bumpass case Judge Speer recognizes the principle applicable by this language: "We think it was incumbent upon her, having actually elected, to plead and prove such a state of facts, if they existed, as in equity would relieve her from the effects of an election." In 69 C.J. 1129, sec. 2416, it is stated that "Where an election is itself the subject matter of a contract, a revocation by the party electing in violation of his contract obligation will not be permitted; but a revocation will be permitted after the executor's repudiation of the condition on which the election was made." See also cases cited in 81 A.L.R. 755.

valuable rights in the testamentary trust that are entirely inconsistent with the functions of a receivership.

■ Neither does appellee's unasserted right of action to set aside the will in question on claim of sole heirship and next of kin, nor his contingent interest in the estate, due to absence of a residuary clause, constitute such an interest therein as would afford any ground for the drastic order under review. In 36 T.J., sec. 26, p. 59, it is stated: "Generally speaking, a receiver will be appointed only when the plaintiff or other party seeking the appointment shows a 'right to or interest in the property or fund or the proceeds thereof,' or at least a 'probable' right or interest therein—that is, a right or interest which is clear and certain from the allegations constituting the cause of action in support of which the receivership is sought. In other words, it should appear that the person seeking a receivership before the final hearing will probably succeed in establishing his right upon the trial." As we view the entire record, plaintiff has placed himself on the veritable "horns of a dilemma": an offer of restoration of the status quo would leave him without any right of recovery in this proceeding; his cause of action to set aside the will, on the other hand, is not being made an issue here.

■ Apart from his allegations of fraud, appellee pleads inadequacy of consideration—One Hundred Thousand Dollars in the second assignment of interest. Mere inadequacy of price will not avoid a contract; 7 T.J., 939; Nolan v. Young, Tex.Civ.App., 220 S.W. 154; Freeman v. Parks, Tex.Civ.App., 102 S.W.2d 291; Batsakis v. Demotsis, Tex.Civ.App., 226 S.W.2d 673; and even assuming a confidential relationship between the parties, surely the consideration here recited cannot be held so grossly inadequate or unconscionable as to call for equitable interposition. Appellee does not occupy the status of a prospective heir who executes an assignment of his expectant interest in the estate of a *living ancestor,* as was the role of D. P. Hollon in the cited case of Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, where the burden devolves upon one claiming under such an assignment to show that the transaction was fair, not inequitable, and supported by an adequate consideration. 5 T.J., p. 16; Burges v. Gray, Tex.Civ.App., 211 S.W.2d 776.

■ Appellee in the alternative declares upon his second assignment of interest, alleging that in any event he thereby owns a share in the estate of $80,000 upward to $100,000, which is presently a legal charge and equitable lien on the properties; that same amounts to a joint interest which is in danger of being lost, removed, materially injured, or dissipated, unless a receiver be appointed as prayed in original petition. Defendant has answered by offering to secure performance of such assignment in a pledge of all assets of the estate as security; attaching a deed of trust to the Mercantile National Bank at Dallas, as trustee, to manage and control said properties until full payment of the indebtedness to Norman, which trusteeship has been accepted by an authorized trust officer of that institution. Certainly no ground for appointment of a receiver would appear under such a showing.

■ We deem unnecessary a further discussion of points advanced by appellant or answering counter-points. Under the same equitable doctrine as hereinabove applied, the estate would revert to the testamentary trustees who have been removed for cause. However, equity will not permit a trust to fail for want of a trustee; and defendant's prayer for relief by way of a successor trustee should be promptly heard and given due consideration by the trial court—being a matter entirely within the province of that tribunal.

Otherwise the judgment under review is hereby reversed, receivership vacated, and order of injunction dissolved.